25 Mass. App. Ct. 479                               479

Republic Floors of New England, Inc. *v.* Weston Racquet Club, Inc.; CPR Industries, Inc.

REPUBLIC FLOORS OF NEW ENGLAND, INC. *vs.* WESTON
RACQUET CLUB, INC.; CPR INDUSTRIES, INC.,
third-party defendant.

No. 85-1087.

Middlesex.   December 16, 1987. — March 18, 1988.

Present: DREBEN, KASS, & SMITH, JJ.

*Contract*, Construction contract, Performance and breach. *Warranty. Evidence*, Agency, Extrinsic affecting writing. *Agency*, Scope of authority or employment. *Practice, Civil*, Counterclaim.

At the trial of claims arising from a contract for the resurfacing of certain tennis courts, the judge erred in instructing the jury that the contractor and the manufacturer of the resurfacing material could not be held responsible for preexisting conditions in the subsurface of the tennis courts, since the contractor had unconditionally bound itself to provide a surface free from defects and had assumed the risk of the subsurface being unsuitable. [483-485]

There was no merit to a contractor's contention that its specific guarantee of the work it had done in resurfacing certain tennis courts was ineffective in the absence of full payment of the sum due it under the contract. [485]

At the trial of a claim for breach of warranty arising from a contract for the resurfacing of certain tennis courts, the doctrine of impossibility of performance had no application, since the risk at issue had been identified by the parties and assigned to the contractor. [485-486]

In view of the testimony at the trial of claims arising from a contract for the resurfacing of certain tennis courts, the judge erred in withdrawing from the jury the question whether the contractor that performed the work had been an agent of the manufacturer of the surfacing material used, for the purpose of guaranteeing the finished work. [486-487]

At the trial of a contractor's action on a contract for the resurfacing of certain tennis courts, the judge erred in ruling that the defendant's third-party claims against the manufacturer of the surfacing material used did not permit recovery on the theory of breach of warranty, where the pleading provided sufficient notice of the facts which were alleged to give rise to liability, and where, moreover, the claims had been tried on this theory by implicit consent of the parties. [487-488]

Republic Floors of New England, Inc. v. Weston Racquet Club, Inc.; CPR Industries, Inc.

CIVIL ACTION commenced in the Waltham Division of the District Court Department on July 26, 1979.

On removal to the Superior Court Department the case was tried before *Samuel M. Flaksman*, J., sitting under statutory authority.

*Ira H. Zaleznik* for Weston Racquet Club, Inc.

*Charles R. Bennett, Jr.*, for Republic Floors of New England, Inc.

*Morris M. Goldings* (*Ellen S. Shapiro* with him) for CPR Industries, Inc.

DREBEN, J. Republic Floors of New England, Inc. (Republic), brought this action to recover the balance due on a contract for the replacement of the playing surfaces of certain tennis courts. Because bubbles had formed on the courts' surfaces, Weston Racquet Club, Inc. (Weston), counterclaimed seeking damages from Republic and brought a third-party claim against the manufacturer of the surfacing material. A Superior Court jury found against Weston on Republic's claim and on Weston's counterclaim and third-party claim.

In its appeal, Weston claims the trial judge erred in his instructions on breach of warranty, erred in precluding the jury from considering the manufacturer, CPR Industries, Inc. (CPR), liable on agency and warranty theories, and erred in certain evidentiary rulings. Weston also complains of the refusal by the motion judge to allow Weston to add an additional party, Republic Floors, Inc. See note 1, *infra*. We reverse.

The facts will be related in connection with each of the claims.

1. *Weston's warranty claim against Republic and the judge's instructions.* In the fall of 1978, Richard J. Trant, Jr., the president of Weston, sought to replace the playing surfaces on the club's courts. The old surfaces had discolored, had bubbled in many places, and had separated from the concrete undersurface.

After examining several products, Trant negotiated with Stephens Weeks, the president of Republic, for the installation of "ChemTurf," a polyurethane material manufactured by CPR.[1] Weeks made a site visit to Weston's courts and examined

[1] In a deposition, the president of CPR testified that after 1977, Republic Floors, Inc., another company of which he was president, took over the

their unsatisfactory condition. Before installing ChemTurf, he performed adhesion tests to determine whether the material would be appropriate for the location, and he also discussed the suitability of the installation with CPR's president, Anthony DiNatale, Jr.[2] Although Weeks assured Trant that ChemTurf would bond to the concrete subsurface,[3] Trant remained unconvinced. Weeks suggested that Trant discuss the matter with James Gilchrist, the inventor of ChemTurf and a chemist at CPR. He was "the best person to talk to about problems of separation from surfaces." Gilchrist was also a vice president of CPR.

Gilchrist told Trant that the primer he had invented formed "a bond that was greater than any vapor pressure that could be produced" and that if ChemTurf were applied properly over the concrete, Trant would not have the problems encountered with his present surface, "at least in terms of it coming off or coming loose . . . ."

Trant decided to go ahead and in April of 1979 wrote Weeks a letter explaining his requirements for the surface and that it was his understanding that both Republic and ChemTurf's manufacturer would guarantee that the surface would have "no debonding, no crazing, no bubbles, no discoloration." Trant testified that the guarantee was important because he had gone through "one product failure already." A check for $10,000.00 accompanied Trant's letter.

Republic began the installation in May, 1979, and substantially completed the work in late June, 1979. On June 26,

---

manufacture of ChemTurf. Republic Floors, Inc., is not to be confused with Republic Floors of New England, Inc. (Republic). It is not apparent on the record before us whether Republic Floors, Inc., and CPR were "operated ambiguously" as a single enterprise. See *My Bread Baking Co.* v. *Cumberland Farms, Inc.*, 353 Mass. 614, 620 (1968).

[2] Weeks so testified; DiNatale in his deposition did not remember having any such discussion.

[3] Weeks testified that his assurances were based on his knowledge of the ChemTurf system, what DiNatale told him, his adhesion tests, and the information provided by Trant that there was a vapor barrier beneath the concrete. According to Trant, Weeks was unconcerned about a vapor barrier.

1979, Weston and Republic signed the letter agreement which is the basis of this proceeding. CPR was not a signatory.

The contract contains the following relevant provisions:

"Condition A. The manufacturer of Chemturf, CPR Industries and the installer, [Republic], agree to jointly and severally guarantee the installation of Chemturf at [Weston] as follows:

[1. CPR and Republic acknowledge that the surfaces are to be used both indoors and outdoors.]

"2. CPR/[Republic] will guarantee the CHEMTURF installation at [Weston] for a period of two (2) years beginning on 6/30/79 and ending on 5/31/81, with respect to the stability of the performance characteristics of the material and with respect to all workmanship and performance of the surface both indoors and outdoors, and against such problems as debonding, delamination, separation, bubbles, crazing, cracks, discoloration, and dead spots. In the event of such occurrences, CPR/[Republic] will restore the surfaces or any portion thereof to original form, function, and performance characteristics."

Condition B of the agreement required a repair and maintenance bond to cover material and labor under the guarantee agreement, and Condition C of the agreement required a contract liability bond to cover Weston's consequential damages.

The contract contained a number of "comments," including one whereby Republic "agrees that all conditions regarding temperature and preparation of substrate to receive the Chem-Turf tennis surface have been met." The final relevant paragraph of the agreement stated: "Joint materials and installation guarantees will be furnished when final payment is received."

Even before the contract was signed, bubbles started to appear under the surface. Weeks told Trant some bubbling was normal and that it would stop.

In early July, Trant, on behalf of Weston, which was having financial problems, signed a number of promissory notes for the

balance due on the contract. Weston, however, refused to pay the notes when they came due as the bubbling persisted and became worse; Republic refused to make permanent repairs while Weston owed it money. Republic then brought this action.[4]

Count I of Weston's amended counterclaim was directed at Republic and alleged breach of warranties, including the specific warranty set forth in Condition A(2) of the June 26, 1979, agreement. Count II was directed against CPR. It incorporated the allegations of Count I and, among other things, alleged negligence on the part of CPR in authorizing the use of Chem-Turf which, Weston claimed, was inappropriate for Weston's facility.[5] Count III, also against CPR, alleged that the Chem-Turf materials contained foreign matter which caused the product's failure.

We turn to the judge's instructions. Although the charge was lengthy, the judge did not spend much time discussing warranties. He referred to the warranties of fitness and merchantability in terms of whether the product was fit for the purpose for which it was intended, but he did not spell out the consequences of a breach. The only mention of the specific guarantee contained in Condition A(2) was that the provision did not preclude Weston from suing for allegedly defective work. After a discussion of inferences, the burden of proof, and

---

[4] Republic also named Weston's landlord, 40-Love, Inc., as a defendant. The trial judge granted 40-Love, Inc., a directed verdict on all claims against it. There is no appeal from this ruling.

A number of unfortunate circumstances have prolonged this litigation. The first trial judge became ill, and a mistrial was declared. After the second trial, Weston's appeal was heard by a panel of this court. Because of the transfer of the judge originally assigned to write the opinion, another panel of this court heard argument on December 16, 1987.

[5] Weston presented evidence at trial that the bubbling and separation were due to vapor pressure, that such pressure was endemic to a concrete floor, and that adhesive flooring such as ChemTurf should not be used on concrete. Republic presented evidence that Weston misrepresented facts as to its vapor barrier, that there was soap in the concrete prior to Republic's application, and that the soap prevented bonding. Weston's expert suggested that the soap was in the ChemTurf, while Republic's claimed the soap had been used by Weston in its efforts to clean the old surface.

inconsistent evidence, the judge concluded his charge by suggesting that Republic and CPR could not be held responsible for preexisting conditions in the subsurface if such conditions caused the bubbles to appear. This final portion of the judge's charge is set forth in the margin.[6]

Weston duly objected to the judge's charge on warranty.[7] We agree that the instructions were inadequate and misleading.

Republic specifically bound itself under Condition A(2) to provide a surface free of bubbling and took the risk of the concrete not being a suitable subsurface for the application of ChemTurf. *Beacon Tool & Mach. Co.* v. *National Prods. Mfg. Co.*, 252 Mass. 88, 90 (1925). The promise was unconditional.

---

[6] "Now, I'm not telling you what to do in this case, all I'm going to say to you is, you ask yourselves certain questions because of the evidence which came in through the testimony as to the condition of the substrate. You ask yourselves: What was the condition of the substrate to receive the ChemTurf surface? There was testimony as to conversation between two of the parties, Weeks and Trant, as to a vapor barrier. Weeks said that he asked Mr. Trant of Weston whether there was a vapor barrier under the concrete surface and that Mr. Trant answered, there was. You determine whether there was or was not defective work on the part of Republic, and if so, if you do that, what the damage would be. The final questions are: Did Republic comply with the terms of the contract as agreed? Was Republic negligent in any way in the construction of the ChemTurf surfaces? Was there a breach of warranty on the part of Republic? If there was compliance by Republic, if there was no negligence by Republic, and there is no breach of warranty, then, of course, they're entitled to recover. But you determine that. If you find any one of these things, then they're not entitled to recover.

"And you determine in the counterclaim whether CPR was negligent, and whether CPR had anything to do with the alleged contaminant as claimed by Weston, which was the alleged soap. Question is: Where did it come from? Was it the residue from the previous installation, the carpet, so-called carpet installation, or was it not? That's the big question. Where did it come from? If Republic had nothing to do with that, then Republic cannot be held responsible for it. If CPR had nothing to do with it, then CPR cannot be held responsible. But ask yourselves these questions. You ask yourself: Was there another or independent cause[ ] which caused the conditions which appeared after the work was completed, or was it caused by the work of Republic? There's no question that bubbles did appear. There's no question about that. All parties agree to that. But what caused them?"

[7] A motion for clarification in the record indicates that the judge directed Weston, which had stated its objections *before* the jury retired, to record them only *after* the jury retired. The procedure ordered by the judge was inappropriate. See Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974).

In view of the problems with the prior surface and Trant's insistence on a guarantee, the possibility of ChemTurf's inability to bond with the concrete subsurface of Weston's courts was an anticipated risk and one which Weston declined to assume. Republic not only undertook the specific guarantee but agreed that "all conditions regarding . . . preparation of substrate . . . have been met." In these circumstances, we will not read into the contract an additional requirement, not inserted by the parties, that the subsurface would not cause bubbling, etc. See *Charles T. Main, Inc.* v. *Massachusetts Turnpike Authy.*, 347 Mass. 154, 162 (1964). See also *Baetjer* v. *New England Alcohol Co.*, 319 Mass. 592, 602 (1946); *Essex-Lincoln Garage, Inc.* v. *Boston*, 342 Mass. 719, 721-722 (1961).

Republic's argument, based on the last clause of the contract, that the guarantee is not effective in the absence of full payment, is without merit. If the bubbling were found to be an uncured material failure of performance, Weston would not be required to make final payment in order to seek damages for the inadequacy of the surface.[8] Restatement (Second) of Contracts § 237 (1979). See *Vander Realty Co.* v. *Gabriel*, 334 Mass. 267, 271 (1956). See also *Tripp* v. *Smith*, 180 Mass. 122, 126-127 (1901), as to Republic's claim.

Contrary to Republic's contention, the judge's instructions cannot be sustained by invoking the doctrine of impossibility. See *Mishara Constr. Co.* v. *Transit-Mixed Concrete Corp.*, 365 Mass. 122, 128 (1974). For that doctrine to apply, there must be "an unanticipated circumstance [which] has made performance of the promise vitally different from what should reasonably have been" contemplated by the parties. *Id.* at 129, quoting from Williston, Contracts § 1931 (Rev. ed., 1938). Here the risk was anticipated and assigned to Republic. In any event, the issue of impossibility was not litigated by the parties. Cf.

---

[8] Weston is probably correct in reading the last clause of the agreement to mean that additional written guarantees of material and installation would be furnished after final payment. The clause does not, as Republic contends, render Condition A(2) ineffective prior to final payment. In any event, if the clause is ambiguous, Weston should be permitted to present evidence as to its meaning.

*Harrington-McGill* v. *Old Mother Hubbard Dog Food Co.*, 22 Mass. App. Ct. 966, 968 (1986).

2. *CPR's liability on agency principles.* The judge ruled that Republic was not an agent of CPR and took that question away from the jury. CPR, it will be remembered, did not sign the June 26, 1979, contract. Although Weeks' testimony was somewhat contradictory as to whether he had the authority to bind CPR to Condition A(2), we must view the evidence in the light most favorable to Weston. See *D'Annalfo* v. *Stoneham Housing Authy.*, 375 Mass. 650, 657 (1978). Weeks testified that he had discussed the proposed application and the adhesive tests with DiNatale, CPR's president. He also testified that he had discussed the guarantee and had specifically obtained permission to enter into it.[9]

While Weeks' out-of-court statements would not be competent to bind CPR, his testimony at trial as to the words and conduct of CPR is admissible evidence of his authority. See *Haney* v. *Donnelly*, 12 Gray 361, 362 (1859); *Smith* v. *Milne*, 262 Mass. 113, 114 (1928); *Dubois* v. *Powdrell*, 271 Mass. 394, 397 (1930); *Courtney* v. *Charles Dowd Box Co.*, 341 Mass. 337, 341 (1960), aff'd, 368 U.S. 502 (1962). See also Restatement (Second) of Agency § 285, comment a, and Re-

---

[9] "Q. Now when you testified in response to [CPR's counsel's] questions, you said that you did not have the express permission of Mr. DiNatale to enter into that obligation."

"A. I said we had the permission to go into a two-year guarantee."

"Q. And you discussed that — that two-year guarantee with Mr. DiNatale?"

"A. Yes."

"Q. And you told Mr. DiNatale that the two-year guarantee was to protect the Weston Racquet Club against the problems that are listed on A.2, didn't you?"

"A. Yes."

"Q. And these problems are debonding, delamination, separation?"

"A. Um-hum."

"Q. Bubbles, crazing, cracks, discoloration and dead spots. Didn't you tell him that?"

"A. Yes."

"Q. And he gave you permission to go ahead and enter into that agreement with Weston Racquet Club?"

"A. Yes."

porter's Notes (1958). In view of that testimony, it was error to take the question of agency away from the jury.[10] *Contrast Mayflower Seafoods, Inc.* v. *Integrity Credit Corp., ante* 453, 459-461 (1988).

3. *CPR's liability on warranty theories.* The trial judge ruled that Weston's third-party claim against CPR did not include claims of breach of warranty. The judge's reading of the third-party claim was too narrow. Count II, directed against CPR, specifically states that CPR and Republic undertook a joint guarantee of the installation of ChemTurf and that, without the guarantee and CPR's assurances that the installation would be successful, Weston would not have gone forward with the project. Those allegations were sufficient to put CPR on notice of Weston's warranty claims.

"Under current Massachusetts practice there is no requirement that a complaint state the correct substantive theory of the case." *Gallant* v. *Worcester,* 383 Mass. 707, 709 (1981). *Whitinsville Plaza, Inc.* v. *Kotseas,* 378 Mass. 85, 89 (1979). The fact that the prayer for relief asked the trial court to "determine and assess damages arising from the negligence," rather than for breach of warranty, is not determinative as long as the pleading put CPR on notice of the nature of the claim or the facts which are alleged to give rise to its liability. Massachusetts Rules of Civil Procedure 54(c), 365 Mass. 821 (1974), specifically provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

Moreover, the claims against CPR were tried on a warranty theory by implicit consent of the parties. See Mass.R.Civ.P. 15(b), 365 Mass. 761 (1974); *National Medical Care, Inc.* v. *Zigelbaum,* 18 Mass. App. Ct. 570, 578-579 (1984). CPR did not object to Weeks' testimony that CPR had authorized Republic to give a guarantee to Weston on its behalf or to Trant's

---

[10] Since the evidence on the issue of apparent authority may be somewhat different at a retrial, we decline to determine whether there was also sufficient evidence of apparent authority for that issue to be submitted to the jury.

testimony that Gilchrist had assured him that the material would bond to the concrete. Cf. *Ruszcyk* v. *Secretary of Pub. Safety*, 401 Mass. 418, 424 (1988). Indeed, CPR called Gilchrist as a witness in an attempt to refute this testimony. Thus, even if the pleadings are narrowly construed, Weston was entitled, under rule 15(b), to an amendment to conform to the evidence.[11] The warranty claims against CPR should have been submitted to the jury.

4. *Evidentiary issues.* Whether the evidence offered by Weston to show a decrease in its membership after the installation of ChemTurf was sufficiently related to the bubbling court surfaces is best decided on retrial, if any, in view of the evidence there presented. We, therefore, do not decide that issue. We also decline to address Weston's claims with respect to rulings concerning the deposition testimony of CPR's president and the use of a report not admitted in evidence, as these questions may not arise on retrial. The judge may, in his discretion, hear evidence to aid in the construction of the agreement even before deciding whether it is ambiguous. *Cullinet Software, Inc.* v. *McCormack & Dodge*, 400 Mass. 775, 777 (1987), and cases cited. See note 8, *supra.*

The judgment in favor of Republic on its complaint and the judgments in favor of CPR and Republic on Weston's counterclaim and third-party claim are reversed, and the matter is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[11] Rule 15(b) further provides that "failure so to amend does not affect the result of the trial of these issues."

In this connection we note that, during trial, CPR claimed that Republic Floors, Inc., and not CPR, was the manufacturer of ChemTurf at the time of the installation. See note 1, *supra.* If, on remand, because of the relations between CPR and Republic Floors, Inc., or otherwise, it appears that an amendment to add Republic Floors, Inc., as a party is appropriate to enable Weston to maintain the claim it intended to bring, see *Bengar* v. *Clark Equip. Co.*, 401 Mass. 554, 557 (1988), such amendment, in the absence of good countervailing reasons, should be allowed.