George Bongaards *vs.* Nina Millen[1] & others.[2]

No. 99-P-1631.

Suffolk. November 13, 2001. - June 4, 2002.

Present: Jacobs, Mason, & Kantrowitz, JJ.

Further appellate review granted, 437 Mass. 1110 (2002).

*Trust,* Validity, Revocable trust, Real estate trust, Beneficiary, Termination, Savings bank account. *Husband and Wife.*

In a civil action arising from the conveyance by the plaintiff's wife's mother of real property to a trust with herself as sole trustee and beneficiary during her lifetime, and with the plaintiff's wife, if she accepted after her mother's death, as sole trustee and beneficiary during the wife's lifetime, the real property was not part of the wife's estate for purposes of the plaintiff's spousal claim under G. L. c. 191, § 15, where the absence of beneficiary signatures on the schedule of beneficiaries at the time of the creation of the trust did not invalidate the trust [53-54], the later attempt by the mother as an individual to transfer the same piece of real property to the plaintiff's wife as an individual was a nullity [54-55], the wife's management of the property for sixteen years showed no indication that property had been diverted from the trust [55-56], and there was no reason to extend the rule enunciated in *Sullivan* v. *Burkin,* 390 Mass. 864 (1984), to a trust created before the date of that decision [56-59].

A bank account maintained by the plaintiff's wife in trust for her sister was part of the wife's estate for purposes of his spousal claim under G. L. c. 191, § 15, where the wife's power over the account during her lifetime was not limited by any trust document, bank rule, statute, or regulation, and consequently, she had the power to withdraw the funds and thereby revoke the trust at any time prior to her death. [59-60]

Complaint for declaration of trust filed in the Suffolk Division of the Probate and Family Court Department on June 10, 1997.

The case was heard by *Nancy Gould,* J., on a motion for summary judgment.

[1]Individually, and as executrix of the estate of Jean Bongaards, and as trustee of the 291 Commonwealth Avenue Trust.

[2]Stephanie L. Millen, also known as Lisa S. Alfe, as trustee of the 291 Commonwealth Avenue Trust and as coexecutrix of the estate of Nina Millen; and Robin J. Millen, as coexecutrix of the estate of Nina Millen.

*Francis T. Mayo* (*George T. Andrews* with him) for the plaintiff.

*Susan E. Stenger* (*Harry S. Miller* with her) for the defendants.

JACOBS, J. In her last will, Jean Bongaards stated that she had intentionally made no provision for her husband, George Bongaards. Following Jean's death, George filed a complaint for declaratory judgment in the Probate and Family Court seeking a determination that real estate purportedly held in trust by her be treated as a part of her estate for purposes of his spousal claim under G. L. c. 191, § 15.[3] After a hearing on the parties' cross motions for summary judgment, the judge ruled, in effect, that the real estate was trust property not subject to a spousal claim, and entered judgment in favor of the defendants.[4]

*Background.* In 1978, Josephine D'Amore, Jean's mother, created the 291 Commonwealth Avenue Trust and at the same time conveyed to the trust real estate in Boston consisting of an apartment building at that address. D'Amore then also declared herself the sole trustee and beneficiary of the trust during her life. Upon D'Amore's death, Jean would, if she accepted, become the sole trustee and the sole beneficiary during her life. About a year later, in 1979, D'Amore purported to convey the real estate to Jean by a deed signed by D'Amore as an individual, and running to Jean as an individual. The 1979 deed, which made no reference to the trust, was drafted by an attorney different from the one who had drafted the 1978 deed and trust. D'Amore died in July, 1979. Jean and the plaintiff continued to live in one of the apartments, as they had since their marriage in 1965, and Jean managed the property until her death in July, 1996. About ten days before she died, Jean executed an acceptance of appointment as trustee, a confirma-

---

[3]In pertinent part, G. L. c. 191, § 15, as amended by St. 1992, c. 286, § 240, states: "The surviving husband . . . of a deceased person . . . within six months after the probate of the will of such deceased, may file in the registry of probate a writing signed by him . . . , waiving any provisions that may have been made in it for him . . . , or claiming such portion of the estate of the deceased as he . . . is given the right to claim under this section . . . ."

[4]In a later and separate summary judgment proceeding, an issue concerning a savings account in trust for Nina Millen also was resolved against the plaintiff.

tory deed of the real estate to herself as trustee, and an appointment of the remainder in trust in favor of her sister, Nina Millen.

*Discussion.* On appeal, the plaintiff argues several grounds in support of his claim that the real estate was not trust property. Additionally, he seeks a spousal share of a bank savings account (see note 4, *supra*).

1. *Validity of the trust.* Article II of the trust provides: "The original beneficiaries of this Trust are the persons listed as beneficiaries in the Schedule of Beneficiaries this day executed by them and the Trustee and filed with the Trustee; and the interests of the beneficiaries are as stated in said Schedule." The plaintiff asserts the trust was void ab initio for the lack of a beneficiary, noting that only D'Amore, as trustee, signed the schedule of beneficiaries, and that the trust instrument required the beneficiaries to execute that schedule. The schedule had been signed by D'Amore contemporaneously with the trust and clearly identified the beneficiaries by name or description and their respective interests.[5] The provision for beneficiary signatures may not be read as a condition precedent to the validity of the schedule. The uncontroverted fact is that the schedule came into existence at the same time as the trust instrument and was signed by the person who was the settlor, sole trustee and only present beneficiary of the trust. Accordingly, the absence of beneficiary signatures relied upon by the plaintiff may not be equated with a lack of beneficiaries or a failure of contemporaneous identification. See 2 Scott & Fratcher, Trusts §§ 112, 112.1 (4th ed. 1988). Compare *Arlington Trust Co.* v. *Caimi*, 414 Mass. 839, 848 (1993) (where the settlor never

---

[5]The schedule of beneficiaries, which was not required by the trust instrument to be recorded in a registry of deeds, was signed only by D'Amore as trustee. The schedule specifies the following beneficiaries and their respective interests: first, a life estate for D'Amore, and following its termination, a life estate for Jean Bongaards. After the termination of her life estate, the beneficial interests are to run to "the then living grandchildren of JOSEPHINE D'AMORE and/or to the living brother and sisters of JEAN BONGAARDS in such proportions as JEAN BONGAARDS shall appoint by an instrument in writing and delivered to the Trustee or by her Last Will and Testament. Upon her failure to so appoint, then upon the termination of her Life Estate, the Trustee shall divide the Trust principal into equal shares so as to provide one share for each of the then living grandchildren of JOSEPHINE D'AMORE and such share shall then be paid over to each such grandchild and the Trust shall terminate."

identified any beneficiary in writing, as required by the declaration of trust, the trust "never came into existence and the attempted conveyance fail[ed] for lack of a cognizable recipient"). At most, and to the extent Jean Bongaards may be regarded as an "original" beneficiary of the trust, the absence of her signature on the schedule is a purely technical failing and, at most, suggests that she then may have been unaware of her status under the trust. "[T]here is no principle of general application that knowledge or consent of the cestui que trust at the time is necessary to the validity of a declaration of trust." *Stuart* v. *Sargent*, 283 Mass. 536, 542 (1933). See *Aronian* v. *Asadoorian*, 315 Mass. 274, 276-278 (1943); *Cohen* v. *Newton Sav. Bank*, 320 Mass. 90, 93 (1946).

2. *Effect of the 1979 deed.* The plaintiff argues that the conveyance of the real estate in 1979 effectively terminated the trust as it transferred the only trust asset.[6] He also cites circumstances he believes indicate that D'Amore intended to convey the property to Jean as an individual.[7]

The reason for the 1979 deed is not readily apparent from the record.[8] On its face, the deed contains critical facts which are inconsistent with the 1978 deed conveying the property to the trust. The 1979 deed is signed by D'Amore individually, and

---

[6]The plaintiff argues the judge erred in allowing, prior to the summary judgment hearing, the motion of the defendants to strike the affidavit of an expert. The affidavit was prepared by an attorney experienced in real estate law who, after reviewing the documents in this case, opined that the 1979 deed effectively conveyed title free of trust to Jean. "It is not the function of an affidavit to bring a legal argument before the trial court. . . . That is the function of a memorandum of law." *Lewis* v. *Antelman*, 10 Mass. App. Ct. 221, 227 (1980). In any event, the essentially conclusory statements in the affidavit were points argued in the plaintiff's memorandum of law in support of his motion for summary judgment and considered by the probate judge, and also are raised in the plaintiff's appellate brief. There was no error.

[7]The plaintiff states in an affidavit that D'Amore agreed to convey the property to Jean directly at her request, and that he believes Jean was present when the 1979 deed was executed. Even if Jean intended to bring about such a transfer, and participated in it, her intent and role are of no relevance in interpreting D'Amore's intent in executing the deed.

[8]Counsel for the defendants sought to determine the circumstances of the drafting of the 1979 deed from the files of the attorney who notarized the deed. In the affidavit of a paralegal, it is stated that the attorney had died and that his file, made available by his executor, did not contain any documents

not in her capacity as trustee. There is no description of the property as trust property. It states that D'Amore's title is derived not from the prior recorded deed to the trust in 1978, but from a 1962 deed to D'Amore which she cited as the origin of her title when conveying the property to herself as trustee. There is nothing in the 1979 deed indicating that the property was being conveyed free of the trust, nor is there any indication that D'Amore was then aware she had previously placed the property in trust. Signing the deed as an individual, and not as trustee, D'Amore could bind only herself and not the trust. See *Rogaris* v. *Albert*, 431 Mass. 833, 835-836 (2000), and cases cited. Because she previously conveyed the property to the trust in 1978, and the 1979 deed purported to convey title from the same source (i.e., the 1962 deed), the 1979 deed could convey nothing, and thus was a nullity. See *Daly* v. *Donovan*, 258 Mass. 226, 227 (1927) ("The grantor, however, not having title, her deed conveyed nothing").[9]

3. *Management of the property.* The plaintiff asserts that Jean treated the property as her own over some sixteen years, thereby confirming that it was not trust property. Although Jean did not, when D'Amore died, formally assume office as a successor

related to the trust or to the 1978 deed.

The attorney who represented Jean for many years prior to her death submitted an affidavit quoting Jean's sister, Nina Millen, in her answer to an interrogatory, stating that D'Amore was very ill at the time she executed the 1979 deed, did not read English, and always intended that her properties remain in her family.

[9]There is no merit in the plaintiff's assertion that the defendants should be estopped from denying the effectiveness of the 1979 deed. He claims the quitclaim covenants in the 1979 deed from D'Amore, see G. L. c. 183, § 11, run to him as Jean's heir and that the defendants' claims are in contravention of their duty to him. He asserts they must be estopped from denying those covenants. See *Zayka* v. *Giambro*, 32 Mass. App. Ct. 748, 751 (1992) ("Estoppel by deed occurs when . . . a grantor conveys property by deed which, unknown to the grantee, the grantor does not own at the time of the conveyance, but which the grantor later acquires" [footnote omitted]). The argument fails because D'Amore did not acquire the property after her 1979 deed. Accordingly, the 1979 conveyance was void, and thus "could not operate by way of estoppel." *Daly* v. *Donovan*, 258 Mass. 226, 227 (1927). Also, the plaintiff has no equitable estoppel claim. He has not alleged any representation or conduct of the defendants intended to induce his reliance or that he relied on any such representations or conduct to his detriment. See *Cellucci* v. *Sun Oil Co.*, 2 Mass. App. Ct. 722, 728 (1974), *S.C.*, 368 Mass. 811 (1975).

trustee,[10] there is no indication in the record that Jean maintained the property in a manner inconsistent with her duties as trustee. The indicia of individual ownership relied upon by the plaintiff relate merely to Jean's failure to identify herself as trustee or to identify the property·as trust property, and are not reflective of any substantive failure to preserve the property for the future beneficiaries.[11] Also, many of the asserted indicia cannot be distinguished from the use of the property to which Jean was entitled as the beneficiary of a life estate. As such, she was "entitled to receive all of the net income of the Trust as shall be earned from year to year." Because there is no evidence that Jean failed to conform to her duties as trustee even though she had not formally accepted those duties, and no evidence that she wrongly acquired or retained for herself any assets or income, the property was not diverted from the trust.[12]

4. *Extension of* Sullivan *v.* Burkin. The plaintiff argues that Jean held such complete control over the trust property that it should be included in her estate under the principle of *Sullivan*

---

[10]Article X provides in relevant part: "In the event of any vacancy occurring in the office of Trustee as a result of the death, resignation or inability of the Trustee to serve or otherwise, such vacancy shall be filled by JEAN BONGAARDS which said successor Trustee shall assume such office only upon the recording in said Registry of an instrument signed and acknowledged by her, setting forth the fact of the vacancy in the office of Trustee and her acceptance of said office."

[11]These indicia include: (1) leases for apartments in the building were executed by Jean as an individual; (2) no bank account was opened in the name of the trust, and Jean deposited rental proceeds in her individual bank account; (3) Jean declared rents and expenses on her individual Massachusetts and Federal tax returns; (4) Jean paid property taxes as an individual; (5) no tax returns were filed for the trust; and (6) the property was insured in Jean's name.

The plaintiff does not argue any wrongdoing in Jean's conduct. The propriety of the treatment of the property for tax purposes is of no moment because any reduction in the trust's after tax net income merely reduced the amount available to Jean as income beneficiary and no contention is made that Jean failed to exercise her right as trustee "to retain such reserves out of the net income as the Trustee deems necessary in order to meet costs and expenses from year to year."

[12]There is some evidence that Jean was aware of the trust status of the property. In 1980, while Jean was executrix of D'Amore's estate, an appraisal was prepared identifying the building as trust property. At some point in 1988, Jean signed an undated certificate of acceptance of appointment as trustee. She incorporated her power of appointment under the trust in a 1992 will.

v. *Burkin*, 390 Mass. 864 (1984).[13] That case held that "the estate of a decedent, for the purposes of G. L. c. 191, § 15, shall include the value of assets held in an inter vivos trust created by the deceased spouse as to which the deceased spouse alone retained the power during his or her life to direct the disposition of those trust assets for his or her benefit, as, for example, by the exercise of a power of appointment or by revocation of the trust." *Id.* at 867. Significantly, however, the court expressly limited its holding to inter vivos trusts "created or amended after the date of this opinion." *Ibid.* The trust before us came into existence in 1978 and therefore is not governed by that decision.[14] Instead, the trust is controlled by the case law prior to *Sullivan* v. *Burkin*, which placed the assets of an inter vivos trust beyond the reach of a spousal claim under G. L. c. 191, § 15, even when the deceased spouse had created the trust and alone had retained dispositive power over the trust assets. See *id.* at 870-871, and authorities cited.

Nevertheless, because the issue of the applicability of *Sullivan* v. *Burkin*, based on Jean's extensive control over the disposition of the trust property[15] has been fully briefed, we make the following observations. *Sullivan* v. *Burkin* indicated that "[t]here may be a different rule if some or all of the trust assets were conveyed to such a trust by a third person." *Id.*

---

[13]There is no merit in the plaintiff's claim that Jean held "extraordinary powers" because of the 1979 deed. As we have indicated, that deed conveyed nothing and Jean's attempt to return the property to the trust therefore was ineffective to convey anything over which she would have independent control. There also is no merit in the plaintiff's assertion that Jean's attempt to amend the trust in 1996 by adding a spendthrift restraint in itself is sufficient to subject the trust assets to his spousal claim.

[14]There is no indication that the trust was effectively restated subsequent to the decision in *Sullivan* v. *Burkin*, 390 Mass. 864, 867, 871 (1984), arguably making it subject to the principle of that decision. See *L.W.K.* v. *E.R.C.*, 432 Mass. 438, 448 n.23 (2000).

[15]Jean's ability to dispose of the trust property, akin to a general power of appointment, derived from her power to terminate the trust. Article XII provides: "The Trust may be terminated at any time by the Trustee hereunder by notice in writing to the beneficiaries then entitled to a present interest . . . . In case of any such termination, the Trustee shall set over, assign, transfer and convey the entire Trust property and estate, subject to any leases, mortgages, contracts of other encumbrances on the Trust estate, to the then lifetime beneficiaries as tenants in common in proportion to their respective interests, and free of all trusts."

at 873, citing *Theodore* v. *Theodore*, 356 Mass. 297, 299-300 (1969) (wife could not claim shares in trusts created by her husband who, although he had named himself as trustee, retaining control during his lifetime with full powers to revoke, amend, or alter the trusts, had not transferred or conveyed any of his property to the trusts, but was administering property placed in those trusts by others). The court also recognized that a "general power of appointment over assets in a trust created by a third person is said to present a different situation." *Sullivan* v. *Burkin, supra* at 873, citing a then-draft provision in the Restatement (Second) of Property: Donative Transfers, which now reads:

> "Appointive assets are treated as owned assets of a deceased donee in determining the rights of a surviving spouse in the owned assets of the donee if the deceased spouse was both the donor and donee of a general power of appointment that was exercisable by the donee alone, unless the controlling statute provides otherwise."

Restatement (Second) of Property: Donative Transfers § 13.7 (1984).[16]

Perhaps militating against following the direction of the Restatement signaled by *Sullivan* v. *Burkin* with respect to trusts created by a third party are the cases permitting such trusts to be considered part of the marital estate and subject to equitable division under G. L. c. 208, § 34. See *Lauricella* v. *Lauricella*, 409 Mass. 211, 213-217 (1991); *Comins* v. *Comins*, 33 Mass. App. Ct. 28, 30-31 (1992). See also *Ruml* v. *Ruml*, 50 Mass. App. Ct. 500, 511-512 (2000). There is considerable force to the view that a person who remains married until the death of his or her spouse should have similar access to the assets of a trust controlled by that spouse as would be extended to

---

[16]See also Restatement (Second) of Property: Donative Transfers § 13.7 comment a (1982): "Under the rule of this section appointive assets are not included as part of the donee's estate for purposes of the surviving spouse's right of election when the donor and donee were different persons, unless the statute provides otherwise."

that person had he or she become divorced from that spouse.[17] See *Sullivan* v. *Burkin, supra* at 872.

.5. *The bank account.* The plaintiff also sought an order that a bank savings account which Jean maintained in the name of "JEAN A BONGAARDS ATF [as trustee for] NINA MILLEN"[18] be included as property subject to his spousal claim. He asserted below that Jean had sole dominion and control of the account before her death, and that the principle of *Sullivan* v. *Burkin* therefore is applicable to the account.

The record supports the conclusion that the account in its trust form was established after the decision in *Sullivan* v. *Burkin.* It is not disputed that Jean informed Nina of the account's existence, and before her death directed the bank to send statements to Nina.[19] As correctly determined by the judge, and essentially conceded by the plaintiff, those facts establish the existence of a valid bank account trust. That determination, while material to the respective rights of Jean's estate and Nina Millen, see *Mikshis* v. *Palionis*, 345 Mass. 316, 318 (1963),

---

[17]Changes to G. L. c. 191, § 15, have been proposed with respect to identifying specific types of property includable in an estate against which a surviving spouse may have a right to elect a share. See Annino, Estate Planning § 11.18 (2d ed. 1997 & Supp. 2001). Unlike statutes in some other jurisdictions, our election statute does not specify what property may be included. See generally Restatement (Second) of Property: Donative Transfers § 13.7 statutory note. At present, the reach of spousal claims under G. L. c. 191, § 15, is left to the decisional process. However, because of the public policy considerations involved, "[t]he question of the rights of a surviving spouse in the estate of a deceased spouse, using the word 'estate' in its broad sense, is one that can best be handled by legislation." *Sullivan* v. *Burkin*, 390 Mass. at 873.

[18]Pursuant to G. L. c. 167D, § 6, added by St. 1982, c. 155, § 9, and amended by St. 1983, c. 590, § 2, deposits made by one person "in trust for another . . . shall be credited to the depositors as trustees for such person," and upon the death of the trustee of such an account, "the amount then on deposit together with the interest thereon may be paid to the person for whom the deposit was made." This section also provides that "[p]ayments may be made to the trustee."

[19]In her response to the plaintiff's request for admissions, Nina stated: "Jean had always told me that the funds in this account were mine. Prior to her death, Jean changed the account to a High Yield Savings Account and added my name to the account. At the time of her death, I was receiving the bank statements."

does not squarely address the plaintiff's spousal claim.

There is no contention that Jean's power, during her lifetime, with respect to her use of the account, was limited by any trust document, bank rule, statute or regulation. Compare *Cohen* v. *Newton Sav. Bank*, 320 Mass. at 91 (depositor signed card agreeing to bylaws and rules of bank and wrote further directions on back of card). Consequently, Jean as depositor/trustee had the power to withdraw the funds and thereby revoke the trust at any time prior to her death. See *Burns* v. *Paquin*, 345 Mass. 329, 332 (1963) ("The ordinary consequence of a [withdrawal and transfer] of the trust account . . . would be to revoke the trust"); Annino, Estate Planning § 13.4 (2d ed. 1997 & Supp. 2001); Alperin & Shubow, Summary of Basic Law § 21.14 (3d ed. 1996) ("A savings bank trust is revocable by the depositor at any time during his life . . . if the depositor changes the form of the account, withdraws the money on deposit, or makes a will leaving the account to someone other than the trust beneficiary . . ." [footnotes omitted]). See also G. L. c. 167D, § 6 (note 18, *supra*), which essentially shields the bank from liability for payment of the account to the trust beneficiary following the death of the trustee but which also may be read as permitting withdrawal of part or all of the account by the trustee. In light of the implicitly reserved power of Jean over the account, including the power to revoke and to use the funds in the account for her own benefit, the principle of *Sullivan* v. *Burkin* applies and the account is subject to the plaintiff's spousal claim under G. L. c. 191, § 15.

*Conclusion.* So much of the judgment of the Probate and Family Court as, in effect, declares that the real estate in issue is not part of the estate of Jean Bongaards is affirmed. So much of the judgment of the Probate and Family Court as, in effect, declares that the bank account in issue is not part of the estate of Jean Bongaards is reversed. Judgment is to enter declaring that the account is to be treated as part of the estate of Jean

Bongaards for purposes of the plaintiff's spousal claim under G. L. c. 191, § 15.[20]

*So ordered.*

---

[20]In a representation supported by the record, the defendants assert the debts and probate expenses of Jean's estate exceed its assets. A commentator has noted that in such a situation, "a literal reading of *Sullivan* suggests that the 'probate estate' is augmented *for computation purposes only* by the *value* of the trust property. Satisfaction of the surviving spouse's claim however must still be had from the probate estate unaugmented by the trust property. Such an interpretation would do little to further the enunciated 'spousal protection' policy goals of *Sullivan.* Under this interpretation, for example, a surviving spouse would still be stymied by an empty probate estate." Rounds, The Vulnerability of Trust Assets to Attack by the Deceased Settlor's Creditors, by the Commonwealth Should It Seek Reimbursement for Medicaid Payments, and by the Spouse, 73 Mass. L. Rev. 67, 80 (1988) (emphasis in original). The same commentator has indicated that *State St. Bank & Trust Co.* v. *Reiser*, 7 Mass. App. Ct. 633 (1979), may provide some guidelines for implementing *Sullivan.* See Rounds, *supra. Reiser* held that where a settlor of a trust reserves the right to amend and revoke the trust or to direct the disposition of its assets, the settlor's creditors may, following the settlor's death, reach the assets of the trust to satisfy their claim to the extent not satisfied by the settlor's estate. See *Reiser, supra* at 638-639. While *Sullivan* v. *Burkin* does not explicitly resolve this issue, we believe that the policy rationale reflected by that decision favors allowing a surviving spouse to reach the trust assets to the extent his or her claim under G. L. c. 191, § 15, cannot be satisfied by the settlor's estate. Because the issue was not briefed or argued, we do not address the mechanics of the application of *Sullivan* to a trust in the circumstances of a solvent estate.