Muse, Christopher J., J.
The plaintiff, North Falmouth Realty Corp., d/b/a Century 21 North Falmouth Realty (“North Falmouth Realty”), has brought a petition for equitable relief arising from an earlier judgment in its favor against the defendant, Andrew J. Rogers, Jr. (“Rogers”). Count I of the complaint sought enforcement of the earlier judgment.[3] In Count III, North Falmouth Realty sought to reach and apply Rogers’s alleged beneficial interest in certain real estate held by the Heritage III Realty Trust (“the Heritage III Trust”).
FACTS
Based on the stipulation of the parties, and on a preponderance of the credible evidence presented, and the reasonable inferences therefrom, the court finds the following facts.
1. North Falmouth Realty is a Massachusetts corporation engaged in the business of real estate sales in North Falmouth, Massachusetts.[4]
2. Rogers is an individual with a place of business located in Framingham, Massachusetts and a residential address at 25 Overhill Road, North Falmouth, Massachusetts. Rogers is an attorney licensed to practice law in the Commonwealth of Massachusetts.
3. Rogers is trustee of the Heritage III Trust, a nominee trust. The Heritage III declaration of trust is dated November 25, 1998, and recorded at the Barn-stable Registry of Deeds at Book 11890, Page 231.
4. In December of 1998, the Heritage III Trust purchased property from Donna Leone, executrix, located on the corner of Quaker and Beech Roads in Falmouth (“the Leone Property”). The Leone Property comprised three lots. Lot 1 had an existing house on it. Lots 2 and 3 were then essentially vacant land.
5. Lot 1 was sold by the Heritage III Trust on or about March 17, 1999. North Falmouth Realty was paid a commission on that sale.
6. In late 1999 the Heritage III Trust entered into a purchase and sale agreement with a party for the sale of Lot 2 together with completion of a custom house, which was then being built on Lot 2.
7. In 2000, North Falmouth Really instituted suit against Rogers and the Heritage III Trust for an unpaid real-estate commission which North Falmouth Realty claimed it was owed on the sale of Lot 2. The case was civil action 2000-062 (“Suit 1”).
8. Following trial and post-trial motions on December 12, 2002, the Superior Court entered its amended judgment in favor of North Falmouth Realty against Rogers individually. Suit 1 was dismissed as to Rogers in his capacity as trustee of Heritage III Realty Trust.
9. Following the taking of timely appeals by the parties, the Appeals Court affirmed the trial court’s amended judgment on May 10, 2005.
10. On July 20, 2005, the Superior Court entered its amended judgment after rescript in Suit 1 and on August 23, 2005, issued execution thereon against Rogers individually in the amount of $212,397.83.
11. Lot 3 on the Leone Property is still owned by the Heritage III Trust.
12. To date Rogers has paid approximately $9,000.00 on said judgment.
13. Rogers is an attorney with over thirty years experience in real-estate law, having particular experience in the drafting of nominee trusts and as trustee of numerous nominee trusts.
14. A number of documents pertaining to the purchase of the Leone Property were signed by Rogers without any indication that he was acting as a trustee. These include the offer to purchase, dated April 28, 1998, and the purchase and sales agreement, dated May 20, 1998.
15. These documents were signed before the Heritage III Trust was created.
16. In Rogers’s experience, it is not uncommon for a nominee trust to be created after the purchase and sales agreement is signed. The form purchase and sale agreement used by the parties in this case expressly provides, in paragraph 4, that title to the property may be taken in the name of a nominee designated by the buyer.
17. Title was taken in the name of Andrew Rogers, Trustee of Heritage III Realty Trust.
18. While the deed into the Heritage III Trust was recorded on December 3, 1998, it was executed on July 27, 1998 and appears to have had the words “Trustee of Heritage III Realty Trust, u/d/t dated *400 November 25, 1998" added subsequent to its execution.
19. The Heritage III Trust did not have its own taxpayer I.D. number at the time of the closing.
20. Rogers obtained financing for the purchase of the Leone Property from Einar P. Robsham in the amount of $950,000.00.
21. Rogers obtained additional financing for the purchase of the Leone Property from the Leone and Broker Nominee Trust in the amount of $207,500.00.
22. Rogers was personally liable on the loan from Robsham.
23. Rogers was personally liable on the loan from the Leone and Broker Nominee Trust.
24. The HUD 1 settlement statement for the purchase of the Leone Property indicates that the borrowers are Andrew J. Rogers, Jr. and Andrew J. Rogers, trustee of Heritage III Realty Trust.
25. Rogers was asked to assume personal liability for the payment of the obligation secured by the second mortgage, and he did so by signing two promissory notes
26. In Rogers’s experience it is not uncommon for a lender to require that the trustees of a nominee trust sign personally.
27. Rogers, individually, obtained the building permit for Lot 2.
28. Rogers, individually, paid for expenses for the Leone Property with his personal checks.
29. Rogers, individually, paid for interest on the loan from the Leone and Broker Nominee Trust with his personal check.
30. The excess proceeds from the sale of Lot 1 were made payable to Andrew J. Rogers, Jr., individually, by North Falmouth Realty at the direction of a North Falmouth Realty agent. The funds were deposited into Rogers’s client-funds account.
31. Rogers provided his individual Social Security number for the reporting of the gross income on the sale of Lot 2.
32. At the closing on Lot 2, a Form 1099-S was prepared. In this and other documents from that closing, the seller/transferor is listed as Andrew J. Rogers, Jr., Trustee. However, Rogers’s Social Security number is used on all documents.
33. A nominee trust is a pass-through tax entity. Therefore, in Rogers’s experience it is not uncommon in real-estate conveyancing involving a nominee trust for a single Social Security number be given for convenience at the time of closing, with the actual tax allocations to be worked out later among multiple beneficiaries.
34. Rogers has not reported the gross income from Lot 2 on his personal tax return.
35. Rogers testified that the gross income will not be reported until Lot 3 is sold and the gain or loss can be computed.
36. Neither Rogers nor any beneficiary reported the proceeds of the sale of Lot 2 to the Internal Revenue Service.
37. It is Rogers’s usual practice as an attorney, in creating a nominee trust, to prepare a declaration of trust and a schedule of beneficiaries.
38. While Rogers testified that his four children were the beneficiaries of Heritage III when it was created, he is unable to produce a schedule of beneficiaries.
39. No written schedule of original beneficiaries of the Heritage III Realty Trust was produced at trial.
40. Rogers testified that it was always his intention that the Leone Property would be owned in a nominee trust, and that his children would be the beneficial owners.
41. The original beneficiaries of the Heritage III Trust were Rogers’s four children.
42. On May 3, 1999, Rogers created the HYJA Family Trust (“HYJA Trust”), of which his children were beneficiaries, and transferred the Leone Property into the HYJA Trust by amending the schedule of beneficiaries of the Heritage III Trust to reflect that the HYJA Trust was the sole beneficiaiy of the Heritage III Trust.
43. Rogers was the original trustee of the HYJA Trust and remained so until about October of 2006, when Catherine Coppins and Meredith Greene became successor trustees.
44. Catherine Coppins and Meredith Greene are Rogers’s children.
45. Rogers’s children did not instruct him to transfer the property to the HYJA Trust.
46. Rogers, as trustee, did not have the power to redesignate the beneficiaries of the Heritage III Trust under Paragraph 2 of the declaration of trust, which sets forth the trustee’s powers.
47. Rogers is an accountant.
48. Rogers has failed to retain any bank statements or cancelled checks for the Heritage III Trust.
49. The transactions involving the Leone Property took place in the context of a long series of investments that Rogers managed for his children, beginning in about 1992. The children gave Rogers authority to make investments for their benefit.
50. At no time was Rogers given distributions as a beneficiary of either the Heritage III Trust or the HYJA Trust. Other than payment of bills for legal services, and reimbursement for expenses, Rogers received no payments from either the Heritage III or HYJA Trusts.
*401 51. Rogers currently resides at 25 Overhill Road in Falmouth, which is owned by Rogers as trustee of High Rock II Realty Trust.
52. At the time that the Heritage III Trust took title to the Leone Property, Rogers resided at 7 Shapquit Bars Road in Falmouth, which was then owned by Bruce Bartolini (“Bartolini”).
53. The Shapquit Bars Road property was later conveyed by Bartolini to Rogers as Trustee of High Rock II Realty Trust, who in turn conveyed it to a third party.
54. Bartolini gave a mortgage on the Shapquit Bars Road property to secure Rogers’s personal obligation, in part, on the loan from the Leone and Broker Nominee Trust.
DISCUSSION
A nominee trust is “an entity created for the purpose of holding legal title to property with the trustees having only perfunctory duties.”[5] Morrison v. Lennett, 415 Mass. 857, 860 (1993), quoting Johnston v. Holiday Inns, Inc., 595 F.2d 890, 893 (1st Cir. 1979). Although the trustee of a nominee trust retains legal title to the property, the trustee has “only the barest incidents of ownership” and has no authority to act without direction from the beneficiaries. Id. at 860-61.
The Heritage III Trust’s declaration of trust shows it was designed as a nominee trust. The trustee agreed to hold property “transferred to him as Trustee” for the sole benefit of the beneficiaries. The trustee’s enumerated powers, though arguably more than “perfunctory,” were “subject to the direction of the beneficiaries.”[6] On paper, Rogers had no personal interest in the Heritage III Trust property which North Falmouth Realty could reach and apply. North Falmouth Really argues, however, that Rogers’s actions compel a finding that he personally held beneficial title to the property.
In Bongaards v. Millen, 55 Mass.App.Ct. 51, 52 (2002), a disinherited plaintiff claiming an elective share of his deceased wife’s estate sought to include property the wife had ostensibly held in trust. The plaintiff argued that his wife, acting as a sole trustee, had treated a building “as her own” and urged the court to find that the building was not trust property, but belonged in his wife’s estate.[7] Id. at 55. The plaintiff offered evidence that his wife had rented out the building in her individual capacity and deposited rental income into her personal account, had never opened a bank account or filed tax returns in the name of the trust, had declared rents and expenses from the building on her personal tax returns, had paid property taxes on the building from personal funds, and had insured the building in her own name. Id. at 56 n.ll.
The Bongaards court distinguished between evidence of a trustee failing to identify themselves as a trustee, or failing to identify trust property as such, as opposed to evidence of a trustee failing to preserve trust property “for future beneficiaries.” Id. at 56. Seeing “no evidence that [the trustee] wrongly acquired or retained for herself any assets or income,” the court concluded that “the property was not diverted from the trust” and was not part of the wife’s estate. Id. .
In the present case, none of Rogers’s actions indicate that he, rather than the beneficiaries, held equitable title to Heritage III Trust property. Rogers’s personal liability for loans, personal payment of trust expenses, and use of his personal Social Security number in the sale of Lot 2 may represent failure of proper identification, but do not amount to misappropriation of trust property. Rogers’s failure to maintain records of the Heritage III Trust finances, and his unilateral change of beneficiaries, may make him liable to the beneficiaries but do not constitute “diversion” of trust property. When the Heritage III Trust sold Lot 1, excess proceeds were made payable to Rogers personally. Rogers deposited them into his client-funds account. Nothing in the record suggests that Rogers converted the proceeds to his personal use, or that the proceeds were unavailable to the Heritage III Trust. North Falmouth Realty has thus failed to meet its burden to prove that Rogers had a beneficial interest in the Heritage III Trust property.[8]
North Falmouth Realty also argues that the Heritage III Trust is a grantor trust, i.e., one where the settlor pays taxes on income from trust assets, and cites IRS regulation 1.671-4 for the proposition that “(w]here a trustee of a grantor trust directs a payor to report to the IRS proceeds from the sale of trust property to his individual Social Security number, that is a factor which shows that he considers himself a true beneficial owner.” The citation is apparently to paragraph (b)(2), which requires a trustee to furnish either the grantor’s or the trust’s taxpayer identification number to “payors,” i.e., those who have an IRS reporting requirement involving the trust. Paragraph (b)(2) says nothing about when or how a trustee acquires a beneficial interest in trust property. The paragraph does refer to “the grantor or other person treated as the owner of the trust,” but this plainly means “ownership” in the context of tax liability.[9]
ORDER
For the foregoing reasons, the plaintiff, North Falmouth Realty Corp., d/b/a Century 21 North Falmouth Realty’s, petition to reach and apply the defendant, Andrew J. Rogers, Jr.’s, alleged beneficial interest in properly held by the Heritage III Realty Trust is DENIED.

This claim was not litigated at trial.

Findings of fact 1-12 were stipulated by the parties. Findings 13-54 were the subject of post-trial requests by the *402 parties. To the extent such requests are not found by the court as facts, they are deemed denied.

A nominee trust typically has five features: the beneficiaries’ names are listed on a separate schedule; the trustee may also be a beneficiary; trustees may act only at the beneficiaries’ direction; third parties may rely on the trustees’ disposition of the property without having to read the trust instrument; and, beneficiaries are free to terminate the trust and have legal title transferred to them as tenants in common. Robert L. Bimbaum & James F. Monahan, ‘The Nominee Trust in Massachusetts Real Estate Practice,” 60 Mass.L.Q. 364, 364-65 (1976).

North Falmouth Realty emphasizes the lack of documentation that the Heritage III Trust had any beneficiaries when it was first set up. As noted above, however,- Rogers offered credible testimony that his children were made beneficiaries at that time.

On appeal to the Supreme Judicial Court, the Bongaards plaintiff apparently dropped this argument to focus on other points of attack. Compare id. at 53-59 (reviewing plaintiffs four arguments for including building in wife’s estate) with Bongaards v. Millen, 440 Mass. 10, 14 (2003) (summarizing plaintiffs three arguments). The SJC affirmed the decision for reasons different than those of the Appeals Court. Bongaards, 440 Mass. at 12. The SJC did not, however, criticize or overrule the Appeals Court’s reasoning cited here. See id. at 14-34 (reviewing and rejecting arguments by plaintiff, amicus, and dissenting justice regarding inclusion of property in estate).

North Falmouth Realty cites Morrison, 415 Mass. at 861, for the proposition that a party who acts like an owner of trust property has a beneficial interest in that property. The cited passage involves the court’s explanation of why it presumed that a certain nonprofit organization was the unidentified beneficiary of a nominee trust. Morrison did not purport to announce a general rule for when property does or does not belong to a trust.

This court declines North Falmouth Realty’s post-trial request for a ruling of law on its right to reach and apply Rogers’s ability to seek reimbursement from the Heritage III Trust for expenses incurred as a trustee. A plaintiff may be entitled to relief not specifically requested in the complaint “as long as the pleading put [the defendant] on notice of the nature of the claim or the facts which are alleged to give rise to its liability.” Republic Floors of New England, Inc. v. Weston Racquet Club, Inc.; CPR Indus., Inc., 25 Mass.App.Ct. 479, 487 (1988). Here, neither the facts alleged in the complaint, nor the relief sought, gave Rogers notice that his right to seek reimbursement might be at issue. A party may be entitled to relief on an unpleaded claim if both parties consented to litigate the claim at trial. Mass.R.Civ.R 15(b), 365 Mass. 730, 761 (1974). See also Jensen v. Daniels, 57 Mass.App.Ct. 811, 816-17 (2003) (noting issue raised in cross-examination, motion to dismiss, and both parties’ requests for rulings of law); Republic Floors, 25 Mass.App.Ct. at 487-88 (finding consent to litigate when plaintiffs witness raised issue and defendant called rebuttal witness). In the present case, there was no adversarial litigation over Rogers’s right to reimbursement.