GEORGE BONGAARDS *vs.* NINA MILLEN[1] & others.[2]

Suffolk. February 4, 2003. - August 12, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Trust,* Real estate trust, Revocable trust, Validity, Termination, Savings bank account. *Husband and Wife.*

This court concluded that, for purposes of determining the plaintiff's elective share of his deceased wife's estate under G. L. c. 191, § 15, the wife's estate did not include certain property the wife held in a valid inter vivos trust; the trust was neither void ab initio for lack of beneficiaries nor terminated by a deed, executed by the trust's settlor and lifetime trustee and beneficiary, which purported to convey the real estate to the plaintiff's wife, where the purported conveyance of property not owned by the grantor (the trust's settlor) was a nullity, and where the express terms of the trust required certain termination procedures that had not been invoked. [13-15]

In an action seeking a declaration that certain property held in trust by the plaintiff's wife was part of her estate for purposes of determining the plaintiff's elective share under G. L. c. 191, § 15, this court declined to ignore the existence of the trust under equitable estoppel principles based on the decedent's conduct regarding the property. [15-16]

In an action brought by a surviving spouse to determine his elective share of his wife's estate, this court concluded that a trust created in 1978 by the plaintiff's wife's mother, but amended in 1996 by the wife acting as trustee, was subject to the rule in *Sullivan* v. *Burkin,* 390 Mass. 864 (1984), which held that, for inter vivos trusts created or amended after the date of that opinion, a spouse's creation of an inter vivos trust over which the spouse alone retained control would not suffice to defeat the surviving spouse's interest in the property placed in that trust; however, this court further concluded that the trust was not governed by that rule, where the wife's mother, rather than the wife, had created the trust. [16-19]

This court declined to extend the rule in *Sullivan* v. *Burkin,* 390 Mass. 864 (1984), to include in a surviving spouse's elective share estate any property, including any trust assets, that would have been treated as marital property to be divided on divorce, where such proposed extension comported with neither basic principles of statutory construction nor judicial restraint on legislative matters, and where such proposed extension improperly equated

---

[1]Individually, as trustee of the 291 Commonwealth Avenue Trust, and as executrix of the estate of Jean Bongaards.

[2]Stephanie L. Millen, as trustee of the 291 Commonwealth Avenue Trust and as co-executrix of the estate of Nina Millen, and Robin J. Millen, as co-executrix of the estate of Nina A. Millen.

death and divorce, and disregarded the settlor's intent, the surviving spouse's needs and assets, and the needs of the settlor's chosen beneficiaries. [19-27] GREANEY, J., concurring in part and dissenting in part, with whom SPINA, J., joined.

This court concluded that it was inappropriate to adopt Restatement (Third) of Property: Wills and Other Donative Transfers § 9.1(c) (2003), which would add "property owned in substance" to the elective share "estate" under G. L. c. 191, § 15, where such issue was not briefed by any party, where the American Law Institute's Restatements of the Law of Property did not command automatic deference, and where no ambiguity in the term "estate of the deceased" permitted a more expansive interpretation. [27-34] MARSHALL, C.J., concurring in part and dissenting in part. GREANEY, J., concurring in part and dissenting in part, with whom SPINA, J., joined.

The judge in an action brought by a surviving spouse to determine his elective share of his wife's estate erred in dismissing the plaintiff's claim regarding the wife's bank savings account, where the account was a valid inter vivos trust established by the plaintiff's wife and had to be considered part of the wife's estate for purposes of G. L. c. 191, § 15. [34-35]

COMPLAINT for declaration of trust filed in the Suffolk Division of the Probate and Family Court Department on June 10, 1997.

The case was heard by *Nancy Gould*, J., on a motion for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Francis T. Mayo* (*George T. Andrews* with him) for the plaintiff.

*Susan E. Stenger* for the defendants.

*Kathleen M. O'Connor*, for Women's Bar Association of Massachusetts, amicus curiae, submitted a brief.

SOSMAN, J. The plaintiff filed a complaint in the Probate and Family Court, seeking a declaration that certain property held in trust by his deceased wife, Jean Bongaards (Jean), should be considered part of her estate for purposes of determining his elective share under G. L. c. 191, § 15, the statute permitting a surviving spouse to waive will provisions and elect instead to receive a statutory portion of the estate of the deceased spouse. The plaintiff's first amended complaint also asserted that assets in a bank savings account maintained by Jean should be subject to his elective share. Acting on cross motions for summary judgment, the judge rejected both claims and entered a judgment dismissing the complaint. The plaintiff appealed, and the

Appeals Court affirmed in part and reversed in part. See *Bongaards* v. *Millen*, 55 Mass. App. Ct. 51, 60-61 (2002). The Appeals Court concluded that the prospective rule announced by this court in *Sullivan* v. *Burkin*, 390 Mass. 864, 867 (1984) (*Sullivan*), which treats assets of certain types of trusts as part of a decedent's estate for purposes of G. L. c. 191, § 15, did not apply to Jean's trust, but that the bank savings account should have been included in the elective share estate. See *Bongaards* v. *Millen, supra* at 60, 57. We granted the plaintiff's application for further appellate review. We now conclude that the result reached by the Appeals Court was correct, but we reach that same result for different reasons.

1. *Facts.* In 1978, Josephine D'Amore, who was Jean's mother, created the 291 Commonwealth Avenue Trust (trust) and conveyed to the trust real estate consisting of an apartment building located at that address in Boston. D'Amore declared herself the sole trustee and sole beneficiary of the trust during her lifetime. The terms of the trust provided that, on D'Amore's death, her daughter Jean would, if she accepted, become the sole trustee and sole lifetime beneficiary.

D'Amore intended the trust property to pass solely to her children and then to her grandchildren. The trust incorporated by reference a schedule of beneficiaries, which provided D'Amore a life estate and, following the termination of D'Amore's life estate, a life estate to Jean, and then to D'Amore's living grandchildren "and/or to the living brother and sisters of Jean Bongaards in such proportion as Jean Bongaards shall appoint by an instrument in writing and delivered to the Trustee or by her Last Will and Testament." Should Jean fail to appoint one or more successor beneficiaries at the time of her death, the trust property was to be divided into equal shares to be paid to each then living grandchild, and the trust was to terminate. After D'Amore's death and until Jean appointed one or more successor beneficiaries, the terms of the trust permitted Jean, as sole trustee and beneficiary then entitled to a present interest, to amend the terms of the trust or to terminate the trust and vest title to the trust property in herself individually.

In 1979, D'Amore executed a deed, signed by her as an individual, which purported to convey the real estate to Jean.

The 1979 deed was drafted by a different attorney, not by the attorney who had drafted the 1978 deed and trust, and the 1979 deed made no reference to the trust. D'Amore died later that year. Jean and the plaintiff, who had lived in one of the apartments at 291 Commonwealth Avenue since their marriage in 1965, continued to live there, and Jean managed the property until her death.

In 1988, Jean executed a certificate of acceptance of her appointment as trustee. This document apparently was never recorded. On July 19, 1996, Jean executed the following documents: a second acceptance of her appointment as trustee (which subsequently was recorded); an appointment of the remainder interest in trust in favor of her sister, Nina Millen; an appointment of Nina Millen as successor trustee; and an amendment inserting a so-called spendthrift clause into the trust document. At the same time, Jean executed a confirmatory deed of the property at 291 Commonwealth Avenue to herself as trustee. That document's stated purpose was "to clarify any such potential uncertainty or conflict" stemming from the 1979 deed and "to the extent that clear title [to the property] is not already held by said Trust or the Trustee thereof, then it shall be so transferred to the said Trustee by virtue of this deed." Jean died ten days later on July 28, 1996.

During her lifetime, Jean maintained a bank savings account in the name of "Jean A. Bongaards ATF [as trustee for] Nina Millen." Jean retained the power to withdraw funds from the account at any time. Before her death, Jean informed Millen of the account's existence and directed the bank to send account statements to Millen. At the time of Jean's death, assets in the account totaled $39,905. Her will stated that she intentionally had not provided for her husband, the plaintiff.

2. *Discussion.* The plaintiff timely asserted his right to a share of Jean's estate pursuant to G. L. c. 191, § 15, which provides, in relevant part, that, "[t]he surviving husband or wife of a deceased person . . . within six months after the probate of the will of such deceased, may file in the registry of probate a writing signed by him or by her, waiving any provisions that may have been made in it for him or for her, or claiming such portion of the estate of the deceased as he or she is given the

right to claim under this section . . . ." The question before us is whether Jean's estate, for purposes of determining the plaintiff's statutory share, includes the property located at 291 Commonwealth Avenue and the funds in the bank savings account.

a. *The trust property.* The plaintiff's claim with respect to the trust property is premised on the following alternate arguments: (1) that Jean owned the property free of trust; (2) that Jean acted as though she owned the property free of trust and her estate is now estopped from claiming the existence of a trust in order to avoid her husband's statutory right to a share of the property; and (3) that Jean's extensive control over the property under the provisions of the trust amounted in substance to full ownership and thereby warranted the property's inclusion in her estate subject to his elective share. We consider each argument in turn.

(i) *Property subject to the trust.* We reject the plaintiff's contention that Jean held the property free of trust. The trust was a valid inter vivos trust when created by D'Amore in 1978. It was not void ab initio for lack of beneficiaries. The schedule of beneficiaries, incorporated by reference in the trust, identified the beneficiaries and their respective interests and was signed by D'Amore, who was the settlor, sole trustee, and, at the time, only beneficiary of the trust. There is no general requirement that beneficiaries, present or future, must acknowledge a trust before it becomes valid, see *Aronian* v. *Asadoorian*, 315 Mass. 274, 276-277 (1943), nor did the terms of this trust require the signatures of the listed beneficiaries in order for the trust to become effective.

The deed purportedly executed by D'Amore in 1979 did not convey ownership of the trust property to Jean individually. As of 1979, D'Amore held the property as trustee for the beneficiaries of the trust, and she lacked power to convey the property in her individual capacity. See *Rogaris* v. *Albert*, 431 Mass. 833, 836 (2000).

We reject the plaintiff's argument that the 1979 deed, together with Jean's subsequent conduct, should be considered as manifestations that D'Amore intended to convey title to the property to Jean and that Jean acquiesced to this intent. The

plaintiff's reliance on language in *Amory* v. *Amherst College*, 229 Mass. 374, 385 (1918), that "a deed should be so construed as to carry out the intent of the parties unless such construction is manifestly repugnant to the terms of the grant," is misplaced. At issue in that case was the proper construction of ambiguous deeds that created two distinct trusts. See *id.* at 384-385. The decision did not suggest that a deed, clear on its face, validly may convey property not owned by the grantor. Where, as here, the grantor has nothing to convey, a mutual intent to convey and receive title to the property is beside the point. The purported conveyance is a nullity, notwithstanding the parties' intent.[3]

Nor could the 1979 deed, by itself, terminate the trust, which under the express terms of its art. XII could only be terminated by written notice and a subsequent transfer to the lifetime beneficiaries. "The law of Massachusetts is plain that a valid trust, once created, cannot be revoked or altered except by the exercise of a reserved power to do so, which must be exercised in strict conformity to its terms." *Phelps* v. *State St. Trust Co.*, 330 Mass. 511, 512 (1953). We conclude, as did the judge and the Appeals Court, that the property was held by Jean in a valid trust from the time of D'Amore's death in 1979 until Jean's death in 1996.

(ii) *Estoppel.* There is no merit to the plaintiff's argument, articulated in various ways, that traditional equitable principles of estoppel should persuade us to ignore the trust's existence and to treat Jean as the individual owner of the property. Circumstances that may give rise to an estoppel are (1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission. See *Cleaveland* v. *Malden Sav. Bank*, 291 Mass. 295, 297-298 (1935). See also *Department of Revenue* v. *W.Z.*, 412 Mass. 718, 720-721 (1992). The plaintiff's assertions that Jean conducted the

---

[3]Contrary to the plaintiff's assertion, a quitclaim covenant in the 1979 deed does not bar the defendants from denying the effectiveness of the deed. It is the defendants, not the plaintiff, who stand as the purported grantee of the deed.

management of the property as an individual, filed income taxes on the property as an individual, and obtained insurance on the property as an individual, even if true, do nothing to demonstrate that Jean's conduct was intended to induce the plaintiff's belief that he would receive a share of the trust property on her death. In fact, the plaintiff has conceded that he fully understood that Jean held the property in trust for the children and grandchildren of D'Amore. The plaintiff therefore cannot establish a claim based on equitable estoppel.

(iii) *Inclusion of trust property in the elective share estate pursuant to* Sullivan. We now turn to the plaintiff's argument that the property, regardless of the fact that it was held by Jean at all times in a valid inter vivos trust created by her mother in 1978, should nevertheless be part of Jean's estate subject to his elective share, pursuant to principles expressed in *Sullivan.* Discussion of the *Sullivan* decision will frame the issue.

Until 1984, the rule of this Commonwealth was that spouses had an absolute right to dispose of any or all of their personal property in their lifetime, with the result that it would not form part of their "estate" subject to their spouse's elective share at their death. See *Kerwin* v. *Donaghy,* 317 Mass. 559, 571 (1945). It was thus possible for a husband effectively to disinherit his wife, without her knowledge or consent, by transferring his property into a trust created for his own benefit during his lifetime, with the sole purpose of removing the property from his estate at death and thereby preventing his wife from asserting her rights under G. L. c. 191, § 15. See *id.* This court's decision in *Sullivan* eliminated this option.

In *Sullivan,* the husband had conveyed real estate to an inter vivos trust, with himself as trustee. He retained the right to the income, as well as the right to revoke the trust at any time, and directed that, on his death, the principal and any undistributed income were to be paid to two other persons, neither of whom was his wife. The husband intentionally left no provision in his will for his wife. See *id.* at 865. Considering the wife's claim to an elective share of the trust, the court concluded that, because *Kerwin* v. *Donaghy, supra,* had been the law for almost forty years, and because counsel and clients were entitled to rely on that precedent, the wife was not entitled to a statutory share of

the trust assets. *Sullivan, supra* at 870-871. The court went on
to state:

> "For the future, however, as to any inter vivos trust cre-
> ated or amended after the date of this opinion, we an-
> nounce that the estate of a decedent, for the purposes of
> G. L. c. 191, § 15, shall include the value of assets held in
> an inter vivos trust *created by the deceased spouse* as to
> which the deceased spouse alone retained the power dur-
> ing his or her life to direct the disposition of those trust
> assets for his or her benefit, as, for example, by the
> exercise of a power of appointment or by revocation of the
> trust" (emphasis added).

*Id.* at 867. Rather than engage in the difficult analyses other
jurisdictions had employed to prevent a spouse's evasion of the
elective share statute by way of an inter vivos trust (e.g.,
analysis of the deceased spouse's "motive" or "intention," or
the "illusory" or "fraudulent" nature of the spouse's creation
of the trust), the court prospectively adopted a bright-line rule
that a spouse's creation of a trust over which the spouse alone
retained control would not suffice to defeat the surviving
spouse's interest in the property placed in that trust. *Id.* at 872-
873, citing *Newman v. Dore*, 275 N.Y. 371, 379 (1927), and
*Staples v. King*, 433 A.2d 407, 411 (Me. 1981).

The Appeals Court considered the applicability of the *Sulli-
van* rule to the trust property at issue here and concluded that,
because the trust came into existence in 1978, it was not
governed by that prospective rule. See *Bongaards v. Millen, su-
pra* at 57 & n.14. This conclusion is not correct. Jean's addition
of a spendthrift clause to the trust in 1996 made the trust subject
to the rule announced in *Sullivan*, which explicitly applies to
trusts "created or amended" subsequent to the date of that deci-
sion, January 23, 1984.

Under that rule, however, the trust property at issue here is
still not subject to the plaintiff's elective share for the simple
reason that the trust was created by a third party, D'Amore, and
not by Jean.[4] The rule announced in *Sullivan* applies only to as-
sets of a trust "created during the marriage by the deceased

---

[4] We reject the plaintiff's theory that Jean "created" the trust when she
executed the confirmatory deed in 1996. The 1996 deed executed by Jean

spouse." *Id.* at 872. This limitation on the rule announced in *Sullivan* was based, in part, on principles set forth in the then current publication of the American Law Institute on the issue of a surviving spouse's rights to assets of an inter vivos trust held by the deceased spouse, the Restatement (Second) of Property: Donative Transfers, Supplement to Tent. Draft No. 5 (1984), now embodied in the Restatement (Second) of Property: Donative Transfers § 13.7 (1986). See *Sullivan, supra* at 869. Section 13.7 treated trust assets as assets of a deceased spouse for purposes of determining a surviving spouse's elective share "if the deceased spouse was both the donor and donee of a general power of appointment that was exercisable by the donee alone, unless the controlling statute provides otherwise." Assets in a trust created by a third person were specifically excluded, even though the deceased spouse may have held a general power of appointment. See Restatement (Second) of Property: Donative Transfers, *supra* at § 13.7 comment a (section applies "if, and only if, the donor and donee were the same person," and assets are not part of elective share estate "when the donor and donee were different persons"). Accordingly, the rule of *Sullivan* does not apply to the trust established by D'Amore.

The plaintiff contends that, even though the property was placed in the trust by D'Amore and not by Jean, Jean's control over the property under the terms of the trust was so great that the property should be included in Jean's estate for purposes of G. L. c. 191, § 15.[5] This contention is not a valid basis for ignoring the restrictions of the *Sullivan* rule, which is already premised on the spouse having effective control over the trust and its assets. *Sullivan, supra* at 867 (rule applies to assets in trust created by spouse "as to which the deceased spouse alone retained the power during his or her life to direct the disposition

confirming that the property was in the trust had no legal effect, because the property was already in the trust.

[5] The plaintiff mischaracterizes the nature of Jean's powers when he contends that Jean's power of appointment was the equivalent a general power of appointment. Jean's power of appointment under the trust was restricted to naming as beneficiaries D'Amore's children and grandchildren. The power was thus in the nature of a limited or restricted power of appointment, not a general power. However, another provision of the trust effectively authorized Jean to terminate the trust and distribute its corpus to herself at any time. This provision effectively gave her unfettered control over the trust property.

of those trust assets for his or her benefit, as, for example, by the exercise of a power of appointment or by revocation of the trust"). Here, Jean did not have a greater degree or different form of control over the trust than the degrees and forms of control on which the *Sullivan* rule is expressly predicated.

(iv) *Proposed modification of the* Sullivan *rule to include all "marital property" in the elective share estate.* A more expansive rationale for reaching the result urged by the plaintiff has been advanced by the amicus, the Women's Bar Association of Massachusetts.[6] That rationale, although echoing some of the *Sullivan* court's reasons for overruling *Kerwin* v. *Donaghy, supra,* should not be extended in the far-reaching and literal manner now suggested. *Sullivan* noted that, since the court's decision in *Kerwin,* "[t]he interests of one spouse in the property of the other have been substantially increased upon the dissolution of a marriage by divorce." *Sullivan, supra* at 872. In the wake of those changes in the divorce laws, the court observed that "[i]t is neither equitable nor logical to extend to a divorced spouse greater rights in the assets of an inter vivos trust *created and controlled* by the other spouse than are extended to a spouse who remains married until the death of his or her spouse" (emphasis added). *Id.* The amicus suggests — and one of today's dissenting opinions essentially agrees — that we should now ignore the limiting language in that observation from *Sullivan* and simply include in the elective share estate any property, including any trust assets, that would have been treated as marital property to be divided on divorce.[7]

Before turning to the specific defects in that proposed equa-

---

[6] While this court ordinarily restricts its discussion to the arguments made by the parties and does not address arguments of amici curiae, see *Matter of the Receivership of Harvard Pilgrim Health Care, Inc.,* 434 Mass. 51, 57-58 (2001), and cases cited, the argument presented by this amicus is sufficiently related to that of the plaintiff to warrant our discussion. Moreover, that approach has been referenced with some approval in the Appeals Court opinion, *Bongaards* v. *Millen,* 55 Mass. App. Ct. 51, 58-59 (2002), and Justice Greaney's dissenting opinion endorses much of the amicus's position and would adopt yet another, slightly different, rationale that has not been briefed by anyone. *Post* at 39, 42-43 (Greaney, J., concurring in part and dissenting in part). That dissent thus necessitates our extended discussion of the arguments raised by the amicus.

[7] While at times seeming to distance itself from the position articulated by the amicus, see *post* at 42 n.7 (Greaney, J., concurring in part and dissenting

tion of property rights on divorce with property rights upon a spouse's death, we note a fundamental flaw in the entire analysis, namely, that it completely ignores basic principles of statutory construction. At issue here is the definition of the term "estate of the deceased" in G. L. c. 191, § 15. Under the statute, a surviving spouse may waive the provisions of the decedent spouse's will and "claim[] such portion of the *estate of the deceased* as he or she is given the right to claim under this section" (emphasis added). *Id.* The section then goes on to provide the surviving spouse with $25,000, plus the income from or outright ownership of specified portions of the remaining real and personal property, with both the fractional portions and the nature of the interest depending on the presence or absence of issue and other kindred. *Id.* The question before us is what "estate" the Legislature intended as the "estate" to be divided under that formula. We are not deciding a common-law issue of property rights, which we may update according to our views of the appropriate development of that common law, but are instead interpreting a statute. Conspicuously absent from the amicus brief (and from Justice Greaney's dissent) is any analysis of what the Legislature intended to include in the "estate" to be divided under G. L. c. 191, § 15. We see no basis for believing that the Legislature's use of the term "estate of the deceased," which has been in the statute in its present form since 1956 (see St. 1956, c. 316, § 2),[8] somehow intended to incorporate

in part), in other places Justice Greaney's dissent invokes and relies on that very position. See *post* at 39 (Greaney, J., concurring in part and dissenting in part) (opining that "choice of form" should not "deny a surviving spouse a share of property in which he or she would have a substantive right had the marriage ended in divorce rather than death"); *post* at 43 (Greaney, J., concurring in part and dissenting in part), quoting *Bongaards* v. *Millen*, 55 Mass. App. Ct. 51, 58-59 (2002) (recognizing Appeals Court's view that "[t]here is considerable force to the view that a person who remains married until the death of his or her spouse should have similar access to the assets of a trust controlled by that spouse as would be extended to that person had he or she become divorced from that spouse").

[8]Prior to 1956, the elective share statute allowed the surviving spouse to waive the will and claim "such portion of the estate of the deceased as he or she would have taken if the deceased had died intestate." G. L. (Ter. Ed.) c. 191, § 15. In 1956, that portion of the statute was revised to its present formulation, allowing the surviving spouse to claim "such portion of the

principles of property division upon divorce that were not made part of G. L. c. 208, § 34, until 1974. See St. 1974, c. 565.

Indeed, there does not appear to be any ambiguity in the Legislature's use of the term "estate of the deceased" in G. L. c. 191, § 15. In context, "estate of the deceased" refers to the decedent's probate estate — the will being waived by the surviving spouse would ordinarily be the operative instrument that would divide the decedent's probate estate, and a spouse dissatisfied with the will's provisions for that division could instead opt for the statutory division of that same "estate." Absent any ambiguity in the term "estate of the deceased" (and no such ambiguity has been identified in any of the briefs or in either of today's dissenting opinions), there would be no basis to interpret that term to mean anything other than the decedent's probate estate.

Regardless whether changing times and the modern array of possible will substitutes may make it advisable to expand the term beyond the mere probate estate, we are not at liberty to update statutes merely because, in our view, they no longer suffice to serve their intended purpose. This is particularly true when the Legislature itself has recently considered numerous proposals to modernize the elective share statute, with differing approaches regarding how the elective share should be harmonized with contemporary concepts of marriage and property, and has yet to adopt any of them. See Note, Marital Property Reform in Massachusetts: A Choice for the New Millennium, 34 New Eng. L. Rev. 261, 270-271, 337-338 (1999) (outlining various proposals to reform elective share statute submitted to Legislature between 1991 and 1999). That the current version of the statute is woefully inadequate to satisfy modern notions of a decedent spouse's obligation to support the surviving spouse or modern notions of marital property does not authorize us to tinker with the statute's provisions in order to remedy those inadequacies. It is up to the Legislature to choose between the complex — and apparently controversial — options for modernizing this outdated scheme, not up to us to

estate of the deceased as he or she is given the right to claim under this section." St. 1956, c. 316, § 2.

modernize it piecemeal according to our views of what remedies should be made available to a disinherited spouse.

It could be argued that *Sullivan* already represents such a tinkering with the definition of "estate" for purposes of G. L. c. 191, § 15, and that ordinary principles of statutory construction should therefore not prevent us from continuing the process begun in *Sullivan*. However, that justification for a significant expansion of the term "estate" in G. L. c. 191, § 15, ignores the fact that *Sullivan* merely closed a loophole through which spouses had been able to evade § 15. As articulated in *Sullivan*, what was to remain part of the "estate" subject to the elective share was property that previously belonged to the deceased spouse. But for the spouse's artificially distancing the property from that "estate" by the creation of a trust while still, for all practical purposes, retaining absolute control over and use of the property, the property would have been part of the deceased spouse's probate, and hence the elective share, "estate." In other words, *Sullivan* kept in the elective share "estate" property that would ordinarily have been in that "estate," refusing to give effect to a spouse's attempt to remove that property from the elective share "estate" but still retain access to it by means of a "trust."

It is one thing for this court to plug loopholes to prevent a spouse's evasion of the elective share statute. It is quite another to expand the reach of the elective share statute itself and, by so doing, frustrate the intent of a third party who is a stranger to the marriage. The recognition in *Sullivan* that property in a trust created by a third party presents "a different situation" from property in a trust "created during the marriage by the deceased spouse," *id.* at 872, 873, was not some hypertechnical distinction. A third party has no obligation to support someone else's spouse, and property owned by a third party has never been part of someone else's spouse's elective share "estate." Thus, when a third party places that property in a trust, the property is not being removed — artificially or otherwise — from that elective share "estate." The property was never in that "estate" in the first place, and the only question before us is whether the settlor's giving of certain powers to a trustee who is (or later becomes) married will now, for the first time,

place additional property into that elective share "estate" in contravention of the third-party settlor's plans with respect to the disposition of that property.[9] The proposed revision of the definition of "estate" to include trust property that was never, prior to the trust's creation, the property of either spouse is not designed merely to prevent evasion of the elective share statute. Rather, it would represent a judicially created expansion of the reach of the statute. It goes far beyond the modest prophylactic measure announced in *Sullivan* and cannot be justified as a mere "extension" of *Sullivan.*

Nor do we see substantive merit to the proposed equation of the "estate" for purposes of the elective share with the marital property of the decedent that would have been divisible if the couple had divorced. Whatever the superficial appeal of equating the two, it is an equation that does not withstand scrutiny and, to the extent that the two situations should be treated equally, the proposed interpretation of the elective share "estate" would not accomplish that objective. While both death and divorce are comparable in the sense that both have the effect of depriving a person of his or her spouse, the similarities end there. Death is not divorce, and the problems posed by each of those two life-altering events are profoundly different. It should not surprise us that the law, be it modern or antiquated, does not view death as the equivalent of divorce, or that the Legislature has adopted quite differing rules governing the disposition of property following those two events. As such, we cannot simply take concepts developed under modern divorce statutes and engraft them onto the elective share statute.

On divorce, marital property is divided based on a judge's assessment of multiple factors — length of the marriage, conduct of the parties, age, health, occupation, amount and sources of income, vocational skills, employability, liabilities, needs of the children, needs of the spouses, "and the opportunity

[9]*Sullivan* did not explicitly address how the elective share is to be satisfied if the decedent's probate estate is insufficient to pay the elective share that has been calculated including trust assets. However, as the Appeals Court noted, the *Sullivan* rule would have little practical effect unless the trust assets themselves could be reached to satisfy the spouse's claim. *Bongaards* v. *Millen, supra* at 61 n.20. While we have not addressed the issue directly, the logic of that analysis is compelling.

of each for future acquisition of capital assets and income."
G. L. c. 208, § 34. The division of marital property also takes
into account "the contribution of each of the parties in the
acquisition, preservation or appreciation in value of their respec-
tive estates and the contribution of each of the parties as a
homemaker to the family unit." *Id.* An expansive approach to
what constitutes marital property is appropriate and fair, where
that marital property will then be divided equitably based on the
contributions, needs, and circumstances of the two divorcing
spouses. Under that approach, trust assets available to a spouse
are included in the marital property subject to equitable division
in the judge's discretion based on the § 34 factors. See *Lauri-
cella* v. *Lauricella*, 409 Mass. 211, 213-217 (1991); *Ruml* v.
*Ruml*, 50 Mass. App. Ct. 500, 511-512 (2000); *Comins* v.
*Comins*, 33 Mass. App. Ct. 28, 30-32 (1992). However, those
§ 34 factors take into account the fact that an item of marital
property has been acquired by way of gift or substantial
contribution from an outside party — while that fact does not
take the asset out of the marital property to be divided, it can
and does influence the disposition of that particular asset. See
*Williams* v. *Massa*, 431 Mass. 619, 625-627 (2000) (no error
where judge's property division awarded husband entirety of as-
sets given to him by his parents); *Tanner* v. *Tanner*, 14 Mass.
App. Ct. 922, 922-923 (1982) (fact that wife's parents provided
down payment for marital home and paid off bulk of mortgage
properly considered in awarding home to wife with minimal
payment to husband, even though home was primary marital
asset). Thus, while trust assets are treated as marital property
for these purposes, the fact that they have been donated by
someone else may be considered in determining how that marital
property is to be fairly divided.

By comparison, the elective share statute grants the surviving
spouse a fixed percentage of the elective share "estate," based
solely on the surviving spouse's unilateral decision to reject the
decedent's will. G. L. c. 191, § 15. There is no assessment of
the surviving spouse's needs, or the equities of that elective
share percentage, or the equities of applying that percentage to
a particular trust that was created and funded by some third
party. Thus, if assets in a trust created by a third party are to be

included in the elective share estate, there is no way of accounting equitably for the fact that the surviving spouse made no contribution toward the acquisition of that asset, and no way of accounting for the fact that the beneficiaries identified by the original settlor may have far greater need for the trust assets than does the surviving spouse. The expansive definition of marital property used in divorce cases causes no injustice, and indeed promotes justice, because of the fine-tuned and case-specific approach to the equitable distribution of that marital property. There is no such fine-tuned or case-specific approach in the elective share statute, which simply makes a mathematical calculation of a percentage of the decedent's "estate," without regard to the needs, contributions, or other equities of the case.[10] G. L. c. 191, § 15. The elective share "estate" for purposes of G. L. c. 191, § 15, should not automatically be equated with the decedent's marital property under G. L. c. 208, § 34, when the elective share "estate" is not distributed in a manner that bears any resemblance to the division of marital property in the event of divorce.

It is also apparent that, on divorce, the fact that one spouse has considerable power over or access to trust assets is an important consideration in any equitable division of the marital estate, regardless of the source of those trust assets. While the spouse with such power over the trust may not have exercised that power yet, the spouse will continue to have that power after the divorce. That one divorcing party has access to such trust assets, if that party chooses, is inherently part of the court's consideration of that party's "opportunity . . . for future acquisition of capital assets and income." G. L. c. 208, § 34. Where the division of property is supposed to be based in part on the parties' respective needs and ability to acquire resources,

---

[10]The suggestion that one of the purposes of the elective share statute is "to return to the surviving spouse his or her economic contribution to the marriage," *post* at 40 n.2 (Greaney, J., concurring in part and dissenting in part), is puzzling. The statute operates automatically, without regard to either spouse's "contribution," and, as discussed previously, even the division of marital property on divorce frequently recognizes that a spouse has made little or no "contribution" toward the acquisition of an asset that a third party has given to the other spouse.

it would result in major inequity if the judge ignored one spouse's ability to resort to trust assets — if the trust assets were not considered in that division, the spouse could exercise those powers over the trust the day after the divorce became final, upsetting the delicate balance struck by the judge in the division of property and award of alimony.

The same is not true when a spouse dies without having exercised powers given to that spouse under a trust established by a third party. There is no prospect of the deceased spouse exercising any of those powers after death. The opportunity to exercise those powers has irrevocably terminated, and the powers that the deceased spouse held in life no longer have any ability to result in some inequitable division of assets between the two spouses. The fact that the spouse *could* have exercised such powers during his or her lifetime does not change the fact that, on death, the opportunity to acquire property from the trust has passed. The power over a trust formerly held by a now-deceased spouse is not the equivalent of a power over trust assets held by a divorcing spouse who is still very much alive and remains empowered to use and dispose of the trust assets.

Moreover, while the amicus proposes that modern notions of marital property should be used to identify property of the decedent spouse that will be subject to the elective share, the elective share statute takes no heed of the surviving spouse's property that would also be marital property. If the idea is to provide the surviving spouse roughly what he or she would have obtained in the event of a divorce, that goal is defeated by not only the elective share statute's fixed percentage formula but also by the fact that divorce divides the entirety of the couple's marital property, while the elective share divides only the property previously owned by the decedent spouse. Thus, for example, if the bulk of the marital property is owned by one spouse, divorce would ordinarily have required that spouse to transfer some of that marital property to the other spouse. Under the elective share statute, however, the surviving spouse may claim a portion of the decedent's property for himself or herself, without regard to how much of the couple's marital property is

already held by the surviving spouse.[11] The elective share statute cannot operate in a manner comparable to property division on divorce unless the elective share "estate" includes all of the property — including that of the surviving spouse — that the court would divide in the event of divorce.

We thus do not accept the premise that underlies the rule proposed by the amicus. While it may be preferable to have an elective share statute based on contemporary notions of marriage and property, that does not mean that elective share principles should necessarily be identical to the principles that define marital property for purposes of division on divorce. Simply importing marital property jurisprudence from G. L. c. 208, § 34, into the definition of "estate of the deceased" under G. L. c. 191, § 15, does not modernize the elective share statute or cure its many defects. There is nothing "modern" about simply making the elective share "estate" larger at the expense of a third-party settlor's intended beneficiaries. Nor can we assume that such an approach will make the statute more equitable, as we have no basis on which to assess the frequency with which trust assets from a third party will be needed more by the surviving spouse than by the originally intended beneficiaries. We cannot, in the name of modernity, simply assume that the surviving spouse's prior marital status entitles him or her to a portion of that trust, notwithstanding the surviving spouse's needs and assets, the third-party settlor's original intent, or the needs of the settlor's chosen beneficiaries.

(v) *Restatement (Third) of Property.* Justice Greaney's dissent proposes yet another approach to the calculation of the elective share estate, namely, that we adopt prospectively the definition recently approved by the American Law Institute in the Restatement (Third) of Property: Wills and Other Donative Transfers § 9.1(c) (2003), which includes in the elective share estate "the value of property owned or owned in substance by the decedent immediately before death that passed outside of probate at the decedent's death to donees other than the surviv-

---

[11]By comparison, the Uniform Probate Code, which includes the surviving spouse's assets in the "estate" to be divided by the elective share, effectively applies the elective share to the entirety of the couple's marital property. See Uniform Probate Code §§ 2-203, 2-205, 8 U.L.A. 103-107 (Master ed. 1998).

ing spouse." See *post* at 39 (Greaney, J., concurring in part and dissenting in part). Comment j to § 9.1(c) explains that property may be "owned in substance by the decedent through various powers or rights, such as the power to revoke, withdraw, invade, or sever, or to appoint the decedent or the decedent's estate as beneficiary. . . . It is irrelevant whether the decedent acquired substantive ownership of the property before or after the marriage by gift or otherwise from someone else." Restatement (Third) of Property, *supra* at 212. Comment j to § 9.1(c) thus dispenses with the express limitation in the former Restatement, now making the spouse's power over trust assets determinative, without regard to whether the spouse created or funded the trust. For the following reasons, we think it is inappropriate to adopt § 9.1(c) of the Restatement (Third) of Property at this time.

None of the materials presently before us — the parties' briefs, the amicus brief, the decision of the judge below, or the decision of the Appeals Court — contains any reference to § 9.1(c) or any other section of the Restatement (Third) of Property. As a fundamental principle, appellate courts should not reach out to decide issues that have not been briefed by any party (or even any amicus). However well intentioned, appellate courts create much mischief when they ignore that principle. See *Commonwealth* v. *Sheehan*, 435 Mass. 183, 194 n.1 (2001) (Sosman, J., concurring) (noting that controversial procedures for discovery of privileged records were created by court without any briefing in *Commonwealth* v. *Bishop*, 416 Mass. 169 [1993]). Before adopting § 9.1(c), sua sponte, we should await an appropriate case where the parties have presented us with the relative merits of the current as opposed to the former Restatement position on this complex issue.[12] Nor do we accept the suggestion that deference to a current Restatement is so

---

[12]Justice Greaney's dissent takes the curious position that references to the Restatement (Second) of Property: Donative Transfers § 13.7 (1986) somehow constitute adequate briefing of the merits of adopting the Restatement (Third) of Property: Wills and Other Donative Transfers § 9.1(c) (2003). *Post* at 40 (Greaney, J., concurring in part and dissenting in part). The very aspect of the new Restatement section and comments that the dissent proposes to adopt is directly at odds with an express limitation articulated in the earlier Restatement. Favorable references to that earlier version, which contained that

automatic or obvious that it needs no briefing.[13] To the contrary, while this court often considers the various Restatements of the Law as prestigious sources of potentially persuasive authority, we have never taken the position that this court should abdicate to the views of the American Law Institute as set forth in its various Restatements.[14]

On the specific issue before us, the position of the Restatement (Third) is diametrically opposed to the position articulated in the Restatement (Second). In the earlier Restatement, only those trusts created and controlled by the decedent spouse were eligible for inclusion in the elective share estate, whereas the current Restatement dispenses with that express restriction and includes in the elective share all property "owned in substance," including property acquired "by gift or otherwise from someone else." Compare Restatement (Second) of Property: Donative Transfers § 13.7 and comment a (1986) with Restatement (Third) of Property: Wills and Other Donative Transfers § 9.1(c) and comment j (2003). The merits of the new Restatement position are not so intuitively obvious that we can dispense with all briefing and simply adopt it. Indeed, without finally deciding the issue, we have the following serious reservations about adopting § 9.1(c) of the current Restatement at this time.

First, as indicated earlier, this is a statutory term we are interpreting, not a common-law concept. Nothing in G. L. c. 191, § 15, suggests that the Legislature intended that the definition of "estate of the deceased" would change based on

express limitation, do not provide us with guidance as to why we should now dispense with that limitation.

Nor does Justice Greaney's prediction that "there will not likely be another case" raising the issue, *post* at 44 (Greaney, J., concurring in part and dissenting in part), justify announcing a prospective rule that has not been addressed in any of the briefs before us. Whether an issue recurs regularly or represents a rare occurrence, we should hesitate to announce a rule that no one has even suggested to us.

[13]Nothing in *Sullivan* announced an open-ended willingness to modify its rule "as long as Restatement text approves it." *Post* at 39 (Greaney, J., concurring in part and dissenting in part). This court's approval of one section of one version of a Restatement does not commit the court to adopt whatever differing approach is taken in some later Restatement.

[14]Indeed, we have recently decided not to follow the Restatement (Third) of Property position on reformation of wills. See *Flannery* v. *McNamara*, 432 Mass. 665, 673-674 (2000).

the American Law Institute's promulgation of successive Restatements of the Law of Property. Whatever its merits, the mere fact that a new Restatement has been issued does not, and should not, cause us to reinterpret a statutory term that long predates the promulgation of either Restatement. To the extent that the Legislature wishes to amend the elective share statute to insert more modern concepts from the current Restatement, that is the Legislature's prerogative. We, however, should not insert such concepts into the statutory scheme absent some basis for believing that those concepts comport with the Legislature's intent.[15] We see no basis for such a belief at this time, although appropriate briefing — or legislative action — might convince us otherwise in the future.

We are also troubled by the uncertain scope of the new Restatement position. Section 9.1(c) provides no definition of the rather murky phrase "owned in substance," but comment j to that section explains that property is "owned in substance" if the decedent had "various powers or rights, such as the power to revoke, withdraw, invade, or sever, or to appoint the decedent or the decedent's estate as beneficiary," and that "the decedent's motive in creating, exercising, or not exercising any of these powers is irrelevant." Comment j thus indicates that the existence of "various powers or rights" held by the decedent spouse will render the trust property "owned in substance" by the decedent and thus subject to the elective share, but fails to

---

[15]Justice Greaney's dissent bypasses this problem by deciding that "a statutory approach that provides a minimum measure of economic security to surviving spouses, usually women, who would otherwise be disinherited" is of greater importance than the "possible disruption of [a third party's] estate plan." *Post* at 40 (Greaney, J., concurring in part and dissenting in part). The relative weight to be given to those competing interests is a matter of legislative policy, not judicial discretion. We have no basis on which to determine how often trust assets from a third party will in fact be needed more by the surviving spouse than by the settlor's intended beneficiaries, and the decision to sacrifice the beneficiaries' interest (and the settlor's intent) in favor of spousal claims is not ours to make. The mere fact that the elective share statute poses "a gender issue of societal importance," *post* at 43 (Greaney, J., concurring in part and dissenting in part), does not give us carte blanche to ignore the Legislature's intent. That we must seek to discern and uphold the meaning that the Legislature intended by the term "estate of the deceased" in G. L. c. 191, § 15, merely recognizes our proper role in construing statutes, and our recognition of that role should not be demeaned as "hand-wringing." *Id.*

specify precisely what "powers" or "rights" suffice or, conversely, what "powers" or "rights" will not be great enough to make the decedent the owner "in substance" of the property.[16] Some settlors have sound reasons for giving a trustee considerable powers over a trust,[17] but they would have to be warned that the mere existence of such powers may give the trustee's

---

[16]Justice Greaney suggests that any ambiguity in the Restatement's comment j to § 9.1(c) is cured by comment b to § 1.1. *Post* at 41-42 (Greaney, J., concurring in part and dissenting in part). Section 1.1 defines the term "probate estate," specifying that the "probate estate" consists of "property owned by the decedent at death" plus property later acquired by the estate. Comment b explains that "[a]ctual ownership, not ownership in substance, is required" in order for property to qualify as "owned at death." It then proceeds to explain that the concept of "[o]wnership in substance refers to property that the decedent did not own but over which the decedent had sufficient control, such as through a power to become the owner, to be treated as the owner for some purposes, such as the [F]ederal estate tax or the spouse's elective share. Thus, property subject to a revocable trust is part of the decedent's gross estate for purposes of the [F]ederal estate tax and is subject to the spouse's elective share, but is not part of the decedent's probate estate." The dissent assumes that this reference to Federal estate tax principles as an example of one form of "own[ership] in substance," made in connection with illustrating that only "actual ownership" suffices to place property in the decedent's probate estate, provides a clear definition of the term "owned in substance" as later used in § 9.1(c) for purposes of the elective share "estate." *Post* at 41-42 (Greaney, J., concurring in part and dissenting in part). We are not so sure. Section 9.1(c) and its comments make no cross-reference to § 1.1 or any of its comments, and make no reference to using Federal estate tax principles to calculate the elective share estate. To the extent the dissent suggests that anything in one's gross estate for purposes of the Federal estate tax is in the elective share estate, that is not the definition provided in § 9.1(c) or any of its comments. Moreover, if the Legislature (or the American Law Institute) intended the elective share to be calculated based on the gross estate for Federal estate tax purposes, it could easily have said so.

[17]When a trustee is given broad powers to withdraw trust assets, or to revoke or amend the trust, such powers give the trustee the maximum flexibility to deal with unforeseen changed circumstances, whether those changed circumstances involve the trust assets themselves (e.g., real estate that turns out to be contaminated with hazardous waste), the needs of family members (e.g., catastrophic accident), changes in the law (e.g., tax laws), or the simple discovery of drafting errors. Not every trust can afford to deal with these contingencies by way of resort to the courts, and even those costly court proceedings cannot cure every problem that may arise due to changed circumstances. Instead, some settlors opt for the ultimate in flexibility by giving the trustee unfettered power to amend or revoke the trust. While both Justice Greaney's dissent (*post* at 44) and Chief Justice Marshall's dissent (*post* at 38) correctly note that elective share claims can be avoided by the

spouse rights to a portion of the trust property in the event that the trustee predeceases his or her spouse. The ambiguities inherent in the concept of "owned in substance" would be the source of much drafting uncertainty and, ultimately, litigation to determine what trust provisions will or will not provide a safe harbor for such trusts.

Finally, we note that the reasons for this change in the current Restatement are not entirely clear. The justification articulated in the new Restatement for an expansive approach to the inclusion of trust property in the elective share "estate" is the desire to avoid disinheritance of a spouse by a decedent spouse's "evasion" — i.e., the same concern articulated in the earlier Restatement (and in *Sullivan*), and already covered in that prior version. Comment i to the new § 9.1(c), *supra* at 211, explains that the expanded calculation of the elective share "estate" is necessary to avoid the inequities that would result by looking solely at the decedent's "probate estate," as "such a regime invites evasion by means of will substitute or end-of-life gifts. If the surviving spouse is to be protected from disinheritance will, the surviving spouse must also be protected from disinheritance by those means." The Reporter's Note to comment j, *supra* at 214, echoes that same concern: "An elective share is of little value to a surviving spouse if it applies only to the decedent's probate estate, because *the decedent* could use will substitutes to disinherit the spouse" (emphasis added). The Reporter's Note, *id.* at 214-215, then traces the development of such concepts as "illusory transfer," devised in various jurisdictions to prevent a spouse's evasion by way of creation of a trust, up through the "breakthrough" of our *Sullivan* case, followed by several cases from other jurisdictions that adopted the *Sullivan* approach. See *Taliaferro* v. *Taliaferro*, 252 Kan. 192 (1992); *Knell* v. *Price*, 318 Md. 501 (1990); *Seifert* v. *Southern Nat'l Bank*, 305 S.C. 353 (1991). As with *Sullivan* itself, *all* of the cases cited in the Reporter's Note involved the *spouse* creating the trust and transferring into that trust assets that had previ-

settlor's placing restrictions on the trustee's powers, there are other risks in imposing such restrictions.

ously been owned outright by the spouse.[18] Conspicuously absent from the Reporter's Note is any precedent for including in the elective share estate assets in a trust that was created and funded by someone other than the decedent spouse.[19] The objective of preventing "evasion" of the elective share statute is an objective that was fully served by the Restatement (Second), and this discussion in comment j and the Reporter's Note in the Restatement (Third) concerning "the decedent" using will substitutes to "disinherit" the surviving spouse does not explain or justify why the Restatement (Third) changed position and chose to include trusts established by third parties in the elective share estate. When a third party makes no provision for someone else's spouse, that failure is not a "disinheritance" of that spouse or an "evasion" of the elective share statute.[20] Nor, contrary to Chief Justice Marshall's dissent, has the settlor

---

[18]Justice Greaney's characterization of the Restatement (Third) as referring "primarily" to cases where the trust was created by the spouse is not accurate. *Post* at 42 n.6 (Greaney, J., concurring in part and dissenting in part). The Reporter's Note to § 9.1, *supra* at 217, cites exclusively to such cases.

[19]Similarly, the Reporter's Notes to Restatement (Third) of Trusts § 25 (2003) contain extensive discussion of cases allowing a surviving spouse to include trust assets as part of the elective share estate. Again, those notes only cite cases involving trusts created by a decedent spouse, not by a third party. See *Montgomery* v. *Michaels*, 54 Ill. 2d 532 (1973); *Dunnewind* v. *Cook*, 697 N.E.2d 485, 487 (Ind. Ct. App. 1998); *Taliaferro* v. *Taliaferro*, 252 Kan. 192, 193 (1992); *Ackers* v. *First Nat'l Bank*, 192 Kan. 319, 321 (1963), clarified, 192 Kan. 471 (1964); *Staples* v. *King*, 433 A.2d 407, 408 (Me. 1981); *Matter of Reynolds*, 87 N.Y.2d 633, 635-637 (1996); *Thomas* v. *Bank of Okla.*, 684 P.2d 553, 554 (Okla. 1984); *Seifert* v. *Southern Nat'l Bank*, 305 S.C. 353, 354 (1991); *Sherrill* v. *Mallicote*, 57 Tenn. App. 241, 243 (1967). Section 25 does not take a position on what trust property is to be included in the elective share estate but merely recognizes that, as a matter of policy, trust property is sometimes included in that estate.

[20]The transcript of the American Law Institute proceedings at which the Tentative Draft of the Restatement (Third) of Property was approved not only does not explain the significant change articulated in comment j, but instead states that the proposed new § 9.1(c) and its comments were intended to reflect *no* significant change from the comparable provisions in the Restatement (Second). American Law Institute, 78th Annual Meeting, Proceedings 2001, at 295-296 (2002). The member presenting the proposed new section explained § 9.1(c) as taking into account "various kinds of will substitutes" when calculating the elective share, *id.* at 295, and then noted as follows: "Subsection (c) I may say also is carried over from the Restatement Second of Property. Maybe the language is a little bit different, *but the basic thrust of it is exactly the same* as in the Restatement Second of Property" (emphasis

exploited any "loophole" that the new Restatement might justifiably "attempt to foreclose." *Post* at 38 (Marshall, C.J., concurring in part and dissenting in part).

We thus think that it is inadvisable to announce any prospective rule on this complex subject at this time. We do, however, agree with the observation that our elective share statute may fail to provide sufficient support for disinherited spouses and that it has failed to keep pace with the changing principles on which the property rights of married couples are now based. Indeed, there appears to be no dispute that our elective share statute is outdated and inadequate. The dispute centers solely on which of the various models for a modern elective share statute would best achieve the desired goals. See Note, Marital Property Reform in Massachusetts: A Choice for the New Millennium, 34 New Eng. L. Rev. 261, 309-339 (1999). Now that two members of this court have announced their inclination to revamp the statute, the need for the Legislature to overhaul this statute may appear more pressing than it has to date. If their proposed judicial legislation prompts legislative action in this neglected but important aspect of marital rights and obligations, Justice Greaney's dissent, although ill-advised, will have accomplished much good. At present, we adhere to the *Sullivan* rule as originally articulated and decline to add "property owned in substance" to the elective share "estate" under G. L. c. 191, § 15.

b. *The bank account.* As a practical matter, the plaintiff's claim to an elective share of the assets of the bank savings account may well be moot, for the record appears to support the defendants' assertion that the debts and expenses of Jean's estate exceed the total assets in her probate estate and in the bank account. We nonetheless consider the claim and agree with the Appeals Court that the bank savings account was a valid inter vivos trust to which the *Sullivan* rule unquestionably applies. The bank savings account, while a valid trust, could be

added). *Id.* at 296. He further explained that § 9.1(c) was based on our *Sullivan* case, identifying *Sullivan* as "a major breakthrough in this area" and noting that § 9.1(c) was "supporting that decision." *Id.* Nowhere did he suggest that anything in the new § 9.1(c) or its comments went beyond the substantive boundaries of the *Sullivan* opinion or the comparable provision in the Restatement (Second).

revoked by Jean, its settlor, at any time, by merely withdrawing its funds, and Jean retained unlimited power to use assets in the bank account trust during her lifetime. Because it appears undisputed that the bank savings account in its trust form was established by Jean after the *Sullivan* decision, we conclude that the assets in that account must be considered part of Jean's estate for purposes of calculating the plaintiff's elective share under G. L. c. 191, § 15.

3. *Conclusion.* We vacate the judgment dismissing the complaint. A declaration is to enter that the real estate at issue is not to be considered part of the estate of Jean Bongaards, but that the assets in the bank savings account are to be considered part of her estate, for purposes of calculating the plaintiff's elective share.

*So ordered.*

MARSHALL, C.J. (concurring in part and dissenting in part). In *Sullivan* v. *Burkin*, 390 Mass. 864 (1984) (*Sullivan*), this court, after considering, among several authorities, a then draft provision of the Restatement (Second) of Property: Donative Transfers (1984) (Restatement [Second]) of the American Law Institute (ALI), concluded that "the estate of a decedent, for the purposes of G. L. c. 191, § 15, shall include the value of assets held in an inter vivos trust created by the deceased spouse as to which the deceased spouse alone retained the power during his or her life to direct the disposition of those trust assets for his or her benefit, as, for example, by the exercise of a power of appointment or by revocation of the trust." *Sullivan, supra* at 867. *Id.* at 869-870 & n.4, 873. The court reached this conclusion after the Appeals Court had reported the precise question to this court in light of the "recent discussions within the American Law Institute."[1] *Id.* at 865 n.2. In response to the Appeals Court report, the parties filed comprehensive briefs with

[1]The Appeals Court's report to this court states in its entirety: "It appearing to the undersigned justices of this court before whom this case was argued that the case presents a question of unusual public and legal significance (G. L. c. 211A, § 10[B]) and may, in light of the recent discussions within the American Law Institute (see Restatement [Second] of Property: Donative Transfers, § 13.7 [Supp. to Tent. Draft No. 5, August 25, 1982]), raise some question as to the present vitality of such cases as *Kerwin* v. *Donaghy*, 317

this court concerning the discussions within the proposed draft (later adopted) of § 13.7 of the Restatement (Second) of Property: Donative Transfers (Tent. Draft No. 5 Supp. 1982) on the subject, and the ramifications of overturning judicial precedent and announcing a new property rule. See *Sullivan, supra* at 871 ("In the area of property law, the retroactive invalidation of an established principle is to be undertaken with great caution").

Today, the court undertakes a sweeping criticism of § 9.1(c) of the Restatement (Third) of Property: Wills and Other Donative Transfers (2003) (Restatement [Third]), the successor to § 13.7 of the Restatement (Second), the section concerning inter vivos trusts at issue in *Sullivan.* The court does so even as it recognizes that the issue was not raised in the trial court, in the Appeals Court, or in this court, was not briefed by any of the parties, *ante* at 28-29, and neither the parties nor the sole amicus[2] makes so much as a passing reference to § 9.1(c), to any other provision of the Restatement (Third), or to any other statement of the ALI, for that matter.

The court's inexplicable reaching out to criticize, entirely in dicta, the ALI's most recent formulation concerning the interplay between inter vivos trusts and the statutory elective share, G. L. c. 191, § 15, is particularly unwarranted because the plaintiff himself has not so much as suggested any expansion of the *Sullivan* rule, but argued only that the peculiar facts surrounding the creation, and the terms of, the trust at issue in this case brought the trust within *Sullivan's* controlling precedent.[3,4] The court correctly concludes they do not.

This is a simple case, controlled by *Sullivan.* As the court

Mass. 559, 572 (1945), the said justices hereby report this case for consideration and determination of the Supreme Judicial Court."

[2]Women's Bar Association of Massachusetts.

[3]The court summarizes the plaintiff's three arguments with respect to inclusion of the trust property in the plaintiff's statutory elective share calculation. *Ante* at 14. None sought to expand the holding of *Sullivan* v. *Burkin*, 390 Mass. 864 (1984) (*Sullivan*). The plaintiff argued only that *Sullivan* was "sufficiently elastic" to govern his case, and that the trust empowered his deceased spouse "to terminate the trust and distribute the corpus to herself at will" and for this reason was governed by the "doctrine" of *Sullivan.*

[4]The judge in the Probate Court concluded that the deceased spouse lacked

correctly notes, *Sullivan* applies only to inter vivos trusts created by a deceased spouse. *Ante* at 17-18. The trust at issue here was not created by the deceased spouse, and under *Sullivan*, is not part of the decedent's estate for purposes of G. L. c. 191, § 15. See *Sullivan, supra* at 872. As the plaintiff makes no other claim, that should end the court's inquiry. The only argument for a "more expansive rationale," *ante* at 19, for reaching the result urged by the plaintiff has been advanced by an amicus. And that amicus makes no reference whatsoever to § 9.1(c) of the Restatement (Third), or to any other treatise of the ALI.[5]

I concur with the conclusion of the court that the arguments actually advanced by the plaintiff have no merit, and for that reason the real estate at issue should not be considered part of the estate of the deceased spouse for purposes of calculating the plaintiff's statutory elective share, G. L. c. 191, § 15. I dissent from so much of the court's opinion as indulges in the criticism of, or forecloses in any respect our subsequent consideration of, the recently approved § 9.1(c) of the Restatement (Third). *Ante* at 28-34. In my view this court could and should review in an appropriate case, if properly raised, whether interpretation of our elective share statute G. L. c. 191, § 15, should be

---

powers of appointment sufficient to satisfy one of the requirements of *Sullivan, supra* at 867: that "the deceased spouse alone retained the power during his or her life to direct the disposition of those trust assets for his or her benefit, as, for example, by the exercise of a power of appointment or by revocation of the trust." Not surprisingly, the plaintiff devotes much of his brief to argue that the powers under the trust of his deceased wife were similar to the powers of the trustee in *Sullivan*. I agree with the court that the plaintiff "mischaracterizes" the nature of the powers of the deceased spouse. *Ante* at 3 n.5.

[5]While it is unnecessary to address at length the separate argument of the amicus, as the court does, *ante* at 19-27, see *Pineo* v. *Executive Council*, 412 Mass. 31, 35 n.6 (1992) ("Since the issue is not raised in the plaintiffs' brief, we decline to address the argument in the brief of one of the amici curiae . . ."), I agree that the statutory property rights that accrue on divorce and the statutory property rights that accrue on a spouse's death cannot be treated "equally." *Ante* at 23. I adhere to this court's observation in *Sullivan* that "[it] is neither equitable nor logical to extend to a divorced spouse greater rights in the assets of an inter vivos trust created and controlled by the other spouse than are extended to a spouse who remains married until the death of his or her spouse." *Sullivan, supra* at 872.

informed by (not dictated by) the ALI's view, as this court did in *Sullivan*.

Indeed, adherence to the statutory construction now urged by the court would have foreclosed our ruling in *Sullivan*. It is neither accurate nor sufficient to say that *Sullivan* closed a statutory "loophole," *ante* at 22, or that the property at issue in that case is subject to the spousal elective share because it "would ordinarily have been" part of the probate "estate." *Id.* The probate estate is, of course, not determinable until the person dies. And *Sullivan* was explicit that it relied for its ruling, not on any proposed new Restatement of the ALI, but on the observation that "significant changes since 1945 in public policy considerations bearing on the right of one spouse to treat his or her property as he or she wishes during marriage" warranted overruling *Kerwin* v. *Donaghy*, 317 Mass. 559 (1945). *Sullivan*, *supra* at 871-872. Indeed, in *Sullivan*, the court did not adopt the ALI's position as such, and notes that, even within the ALI, the issue was contentious. *Id.* at 869.

Contrary to the court's intimation, consideration in an appropriate case whether § 9.1(c) of the Restatement (Third) should provide guidance to this court's review of a G. L. c. 191, § 15, claim concerning an inter vivos trust created by a third party would not necessarily "contravene" every settlor's plans. *Ante* at 22-23. It is one thing for a settlor to provide that independent trustees are to direct the disposition of some trust assets to a spouse beneficiary during her lifetime, with all unexpended trust assets passing to residual beneficiaries. It is quite another for a settlor to relinquish all control of the trust to a sole trustee (a spouse) who alone has the power to direct the disposition of all trust assets to herself as beneficiary on the settlor's death, as the settlor did in this case. If *Sullivan* closed a "loophole," in G. L. c. 191, § 15, concerning what "property" of the deceased spouse is to be considered for purposes of the deceased spouse's "estate," *Sullivan*, *supra* at 871, so too might other "loopholes" be closed by this court. The principles articulated by § 9.1(c) of the Restatement (Third) can reasonably be seen as an attempt to foreclose another "loophole," rather than any attempt to "satisfy modern notions of a decedent spouse's obligation to support the surviving spouse or modern notions of marital property." *Ante* at 21.

The purpose of the elective share, G. L. c. 191, § 15, is, as noted by Justice Greaney, to "provide[] a minimum measure of economic security to surviving spouses, usually women, who would otherwise be disinherited." *Post* at 40 (Greaney, J., concurring in part and dissenting in part). I reject any suggestion that this court cannot interpret the statute to effectuate this purpose. Surely the "question of the rights of a surviving spouse in the estate of a deceased spouse, using the word 'estate' in its broad sense, is one that can best be handled by legislation." *Sullivan, supra* at 873. But until the Legislature acts, "the answers to these problems will 'be determined in the usual way through the decisional process.' " *Id.* at 874, quoting *Tucker* v. *Badoian*, 376 Mass. 907, 918-919 (1978) (Kaplan, J., concurring).

GREANEY, J. (concurring in part and dissenting in part, with whom Spina, J., joins). I agree with the court's conclusion that the plaintiff cannot recover in this case on the theories argued. I favor adopting, however, the principles expressed in § 9.1(c) of the Restatement (Third) of Property: Wills and Other Donative Transfers (2003), to govern assets held by a decedent in a trust with terms like this trust, which permit the decedent to control the trust assets entirely for his or her sole benefit, whether those assets were placed in the trust by the deceased spouse or by a third person.[1] I would do so because this court's decision in *Sullivan* v. *Burkin*, 390 Mass. 864, 867 (1984), contemplates an extension of this sort as long as Restatement text approves it (which the text now does) and because the approach taken by the American Law Institute (ALI) treats functional equivalents of ownership similarly and does not allow choice of form to deny a surviving spouse a share of property in which he or she would have a substantive right had the marriage ended in divorce rather than death. If the protection contemplated by the statutory elective share is to have any practical significance in an age where conventional estate planning offers scores of will substitutes, a deceased's "estate" cannot be limited solely to the

---

[1] I am mindful that "[i]n the area of property law, the retroactive invalidation of an established principle is to be undertaken with great caution." *Sullivan* v. *Burkin*, 390 Mass. 864, 871 (1984). Consequently, I would apply such a rule on a prospective basis only, to any trust created or amended after the date of this opinion.

probate estate.[2] The possible disruption of one's estate plan does not diminish the importance of a statutory approach that provides a minimum measure of economic security to surviving spouses, usually women, who would otherwise be disinherited. Indeed, at its most elemental level, the elective share was designed to frustrate the intent of a settlor or testator whose estate plan otherwise would operate totally (or substantially) to disinherit his or her spouse.

It is not quite right to say, as the court does, that this issue has not been briefed. Although the plaintiff has not specifically cited the Restatement, his arguments are entirely congruent with that authority. More directly, the plaintiff relies (as does the amicus, the Women's Bar Association of Massachusetts), as might be expected, on the decision of *Sullivan* v. *Burkin*, *supra*, which has Restatement (Second) principles and thinking at its core. The Restatement (Second) is also referenced specifically in the decision of the Appeals Court. See *Bongaards* v. *Millen*, 55 Mass. App. Ct. 51, 58 & n.16 (2002).[3]

As noted by the court, the Restatement (Third) now expressly includes, as part of the deceased spouse's estate for purposes of

[2]The purpose of G. L. c. 191, § 15, is twofold. The obvious purpose is to provide support to the surviving spouse, thus underscoring the proposition that the obligation to support one's spouse continues after death. In addition, the statute attempts to return to the surviving spouse his or her economic contribution to the marriage, thus recognizing the contemporary philosophy that marriage is an economic partnership. Neither purpose is served when a spouse has the practical advantage of entire ownership in trust property as long as he or she lives, yet is permitted to deprive his or her spouse of an elective share in the property on death.

[3]This court consistently has looked to the views expressed by the American Law Institute for guidance in the context of property law (a point exemplified by the *Sullivan* decision) and, more recently, has relied on the Restatement's principles contained in Restatement (Third) of Property (Donative Transfers) (Tent. Draft No. 1, 1995), with respect to the reformation of wills and trust instruments. See, e.g., *Flannery* v. *McNamara*, 432 Mass. 665, 671-672, 674 (2000) (citing with approval § 11.2[b][3] on admissibility of extrinsic evidence to prove ambiguity in will, declining to follow § 12.1 allowing reformation of unambiguous will); *BankBoston* v. *Marlow*, 428 Mass. 283, 285-286 (1998) (citing with approval § 12.2 allowing reformation of trust instrument that produced tax results inconsistent with settlor's intent); *Putnam* v. *Putnam*, 425 Mass. 770, 772 & n.3 (1997) (relying on § 12.1 to establish standard for existence of mistake in drafting trust instrument, noting reluctance of court to recognize mistake in unambiguous will document).

a surviving spouse's elective share, "the value of property owned or owned in substance by the decedent immediately before death that passed outside of probate at the decedent's death to donees other than the surviving spouse." Restatement (Third) of Property: Wills and Other Donative Transfers § 9.1(c) (2003). The court's criticism of the ALI and its Restatement (Third) of Property: Wills and Other Donative Transfers is quite remarkable. The court suggests in various ways that the approach adopted by the ALI is vague, unsupported, contradictory, and poorly reasoned. I disagree.

The text of the Restatement makes reasonably plain that the ALI is adopting, and building on, the acknowledged and well-reasoned change made by this court in *Sullivan* v. *Burkin, supra*, to extend spousal elective share rights to property owned outright or virtually outright by the deceased spouse. The definition of "owned in substance" in the Restatement is not, as characterized by the court, "murky." *Ante* at 30. Comment j to § 9.1(c) explains that property may be "owned in substance by the decedent through various powers or rights, such as the power to revoke, withdraw, invade, or sever, or to appoint the decedent or the decedent's estate as beneficiary. . . . It is irrelevant whether the decedent acquired substantive ownership of the property before or after the marriage by gift or otherwise from someone else. The objective is to equate property owned in substance with probate property, which includes property that the decedent acquired before or after the marriage by gift or otherwise from someone else." The term is further illustrated in a definitional section of Restatement text as "property that the decedent did not own but over which the decedent had sufficient control, such as through a power to become the owner, to be treated as the owner for some purposes, such as the federal estate tax or the spouse's elective share. Thus, property subject to a revocable trust is part of the decedent's gross estate for purposes of the federal estate tax and is subject to the spouse's elective share, but is not part of the decedent's probate estate. The same applies to property in a trust over which the decedent had a general power of appointment . . . ." Restatement (Third) of Property: Wills and Other Donative Transfers § 1.1 comment b (1999). This definition clearly identifies that it pertains to

transfers made (as here) by a third party; that it "refers to property . . . over which the decedent had sufficient control, such as through a power to become the owner" (which is the case here); and that it includes property held by the decedent which is subject to the "federal estate tax" (which is also the case here).[4] *Id.* In other words, the Restatement (Third) makes clear what common sense suggests: if the deceased spouse has complete control over assets in a trust, the deceased spouse should be treated as the trust's owner for purposes of the surviving spouse's elective share rights.[5]

The statements made by the member referred to in the court's opinion, *ante* at 33 n.20, at the meeting at which the Restatement's principles were adopted, are entirely consistent with what has been said above. The fact of the matter, however, is that the final product bears the approval of the entire membership of the ALI reached only after long deliberative processes and with involvement and commentary by judges, lawyers, academics, and experts in the area of property rights, wills, and other instruments that affect donative transfers and spousal elective share rights.[6]

The court suggests that my dissent rests on principles of equitable property division under G. L. c. 208, § 34. This is not so.[7] I simply recognize, as the *Sullivan* court did, that the area of marital property division bears some intrinsic relevance to

---

[4] The record indicates that the value of the trust assets was included in Jean's Federal estate tax returns.

[5] The court bolsters its conclusion today with the observation that a person who could have, but did not, exercise powers over trust property during his or her lifetime should not fairly be treated as the property's owner. *Ante* at 26. This somewhat myopic view of ownership was implicitly rejected by the *Sullivan* court when it concluded that it is the extent of control over the disposition of trust assets (rather than the actual disposition of those assets), that is determinative of the trust property's inclusion in a surviving spouse's elective share. See *Sullivan* v. *Burkin, supra* at 872-873.

[6] That the Restatement (Third) of Property: Wills and Other Donative Transfers primarily refers to decisions that involved trusts and instruments crafted by the decedent is not significant. The *Sullivan* court moved away from traditional hidebound notions of ownership, and existing precedent has not yet (at least on the subject we consider today) had the opportunity to take the next logical step.

[7] Indeed, the court's opinion appears to respond primarily to the expansive position on this issue advanced in the amicus brief, rather than the more

the operation of G. L. c. 191, § 15. See *Sullivan* v. *Burkin, supra* at 871-872. The Appeals Court made a similar analogy in this case when it said: "There is considerable force to the view that a person who remains married until the death of his or her spouse should have similar access to the assets of a trust controlled by that spouse as would be extended to that person had he or she become divorced from that spouse." *Bongaards* v. *Millen, supra* at 58-59. Doubtless there may be instances in which the statute's mechanical formula for determining the elective share amount, regardless of what property is included in the "estate of the deceased," might overcompensate a surviving spouse of independent means or one who has been otherwise provided for by life insurance, pension death benefits, or other will substitutes. It could also provide a windfall to one who, due to the short duration of the marriage, should not be entitled to a full statutory share of the deceased spouse's estate. Such occurrences, undoubtedly infrequent, are part and parcel of any elective share statute. In the vast majority of cases, however, the statute, interpreted to include assets in trusts with terms such as the trust before us, would not operate to create unjust results but rather would provide a measure of equity and justice to an effectively disinherited spouse, typically a wife. There thus is imbedded in the entire scheme a gender issue of societal importance that can be appropriately addressed and solved straightforwardly by a common-law court, without hand-wringing over statutory construction.[8]

My position is supported by the observations that (1) in

limited view set forth in my dissent. It should be obvious that I favor prospective expansion of the "estate of the deceased" no further than to include assets held in an inter vivos trust when the terms of the trust (as they did here) permit the decedent alone to alter, amend, or revoke the trust to devote the assets entirely to his or her sole benefit, regardless whether those assets were placed in the trust by the deceased spouse or by a third person.

[8] I specifically disagree with the court's notion that I am ignoring basic principles of statutory construction because we are construing a legislative term, namely, the "estate of the deceased," that, in the court's view, is unambiguously confined to the deceased's probate estate. The entire elective share statute is underpinned with common-law concepts drawn from trust law and from the law of donative transfers, and its terms, thus, must be construed in light of common-law notions of probate and nonprobate assets and concepts of equity. The *Sullivan* court had no hesitation in taking a trust that was non-testamentary in nature and making it a part of the "estate of the deceased" for

almost every situation, the elective share does not come into play because the deceased spouse did not directly or indirectly seek to disinherit the surviving spouse; and (2) settlors such as D'Amore could, by appropriate wording, achieve the ends apparently sought here by not giving the sole trustee and primary beneficiary a power akin to a general power.

I recognize that a sweeping judicial change in this area could have unintended far reaching consequences and adhere to the view expressed by the *Sullivan* court, that "[t]he question of the rights of a surviving spouse in the estate of a deceased spouse, using the word 'estate' in its broad sense, is one that can best be handled by legislation." *Sullivan* v. *Burkin, supra* at 873. As noted by the court, the Legislature "has recently considered numerous proposals" and at least five bills currently are pending before the Legislature to "modernize" the current elective share statute, acknowledged by the court to be "woefully inadequate." *Ante* at 21. Based on the lack of legislative action to date, it cannot be expected that the Legislature will promptly act in the wake of the court's decision today. Moreover, because the court leaves little margin for hope that any judicial relief in the area of spousal elective share rights will be forthcoming (and because any ruling on the subject would be prospective only), there will not likely be another case to achieve an equitable result based on the reasoning of *Sullivan* v. *Burkin, supra.*

---

purposes of the elective share statute. To distinguish the *Sullivan* decision by pointing out that it dealt with a trust created by the decedent and not by a third party is to beg the precise question we have undertaken to address — whether the "estate of the deceased" should include trust property over which the decedent (like Ernest G. Sullivan or Jean A. Bongaards) enjoyed absolute control and use so as to be treated, for all practical purposes, as the property's owner during his or her lifetime, regardless of the property's original ownership?